## Case No. 15,598.

### UNITED STATES v. LIDDLE.

[2 Wash. C. C. 205.] [1]

Circuit Court, D. Pennsylvania.    Oct. Term, 1808.

ASSAULT AND BATTERY—MEMBER OF FOREIGN LEGATION—EVIDENCE OF DIPLOMATIC CHARACTER.

1. Indictment for an assault and battery, on a member of the legation from Spain. The certificate of the secretary of state, dated subsequently to the assault and battery, is the best evidence to prove the diplomatic character of a person, accredited as a minister by the government of the United States.

[Cited in U. S. v. Ortega, Case No. 15.971; U. S. v. Benner, Id. 14,568.    Cited in brief in Re Baiz, 135 U. S. 421, 10 Sup. Ct. 854.]

2. Parol evidence was admitted, to prove the period when a person was considered by the government of the United States as a minister.

3. The law is the same in the case of a defendant charged with an assault of a minister, as when charged with the same offence against a citizen; and if the minister gave the first assault, the defendant will be excused for the subsequent battery, though he was a minister.

The defendant [William Liddle] is charged in the indictment; with an assault and battery committed on Don Ignatius Peror De Lima, attached to the legation of Spain, and executing the duties of secretary of legation. The first count states him to be a public minister of Spain, viz., a gentleman attached to the legation of Spain, and executing the duties of secretary of legation: the other counts are general, and state him to be a public minister. The evidence of one of the witnesses for the prosecution, stated that the defendant, a constable, had taken a domestic of De Lima, and was carrying her before a magistrate, when De Lima came up, put his hand gently on Liddle's shoulder, and inquired what was the matter; that Liddle inquired if he meant to rescue his prisoner; and immediately gave him two very severe blows with a stick, which De Lima returned. A witness for the defendant, stated that De Lima ran to the constable, seized him violently by the breast; insisted upon his releasing the prisoner; continued his hold, though two or three times desired by Liddle to desist, who stated that the prisoner would have justice done to her, before the magistrate, where De Lima might appear; that De Lima still continued his hold, and jostled him into the gutter, when the defendant, with a stick in his hand, gave De Lima a blow, which De

1 [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States. under the supervision of Richard Peters, Jr., Esq.]

Lima returned. To prove the public character of De Lima, a certificate from the secretary of state, dated April, 1808, was read, stating that when Mr. Feronda produced to the president his credentials, as charge des affaires of Spain, he also introduced De Lima as a gentleman attached to the legation. and performing the duties of secretary of legation.

Mr. Hopkinson objected, that as the assault laid and proved, was in October, 1807, this certificate did not show, that, at that time, De Lima was accredited as secretary of legation; and that parol evidence was inadmissible to supply this defect.

(Mr. Dallas had offered himself to prove, that long before October, 1807, the official character of Feronda was notorious, and that he was treated and considered by the government as minister of Spain.)

Mr. Dallas read 4 Burrows, 2016, to prove that the attorney of the United States, prosecuting, was evidence of the official character of the minister, and that he was received as such by the government.

Mr. Hopkinson, contra. The introduction and acceptance of a minister, is either mentioned on the records of the secretary of state's office, and if so, a defect in the certificate can only be supplied by the secretary himself; or is a matter in the private recollection of the secretary, in which case his certificate is no more evidence than a certificate from the clerk of a court, not given under his official seal, and in a matter where he is authorized to certify.

BY THE COURT. The certificate of the secretary is good evidence, and the best to prove the essential point, that he was received by our government, and accredited as the charge des affaires of Spain; and it also proves, that at the same time De Lima was presented and received as secretary attached to the legation. This is not like the case of a certificate from the clerk of a court; for he certifies as to things respecting third persons. Here, the certificate of the secretary, the proper organ of the government, is an acknowledgment by the government that De Lima is received and considered as entitled to the character attributed to him; and, of course, there can be no better evidence of that fact. After this acknowledgment, parol proof of the time since which Feronda has been considered a minister by the government, and has acted in his official character, is proper; and this latter, in connexion with the certificate, will fix the time when the privileges of De Lima commenced.

Mr. Dallas proved, that prior to October, 1807, Feronda was treated by our government as minister, and that he was notoriously considered as entitled to that character. To prove that De Lima was to be considered as a public minister, Mr. Dallas read Vatt. Law Nat. 664, bk. 4, c. 5, § 55; Id. c. 6, §§ 69, 75, 76; Id. c. 9, § 122; 3 Burrows, 1478; 4 Burrows, 2017, 3 Term R. 79; Mart. Law

Nat. 250, bk. 7, § 3; [Respublica v. De Long-champs] 1 Dall. [1 U. S.] 111. The 122d section, cited from Vattel, states, that the secretary to the embassy is a kind of public minister, and is under the protection of the laws. Second; it is not necessary to lay in the indictment, or to prove, that the defendant knew the public character of the secretary: the act of congress does not require it, and such a principle would be absurd.

Barnes & Hopkinson, for defendant, contended: First, that if a foreign minister offend a citizen, the latter may oppose him without infracting the law of nations. Vatt. bk. 4, § 80. Secondly, that it is no violation of the law of nations, to assault a minister, unless the aggressor knew that he was a minister. Mart. Law Nat. 226, 267; Vatt. Law Nat. bk. 4, c. 7, § 82, 107. The act of congress does not punish an assault upon a minister, except where it is in violation of the law of nations: therefore, if the first assault be committed by the minister, or the battery be committed by one not knowing that the person is a minister, these authorities prove that it is not against the law of nations. Upon the evidence, it was contended, that the first assault was committed by De Lima, and that the defendant did not know his public character. Third, that even if it appeared that De Lima was appointed by his sovereign, still a secretary of legation is not a public minister. He may be entitled to the protection of the law of nations, and yet not be a minister. Mart. Law Nat. 201. The protection is not claimed by the secretary, but by the minister for him. 3 Term R. 79; Ward. Law Nat. 316; [Respublica v. De Longchamps] 1 Dall. [1 U. S.] 117; 2 Ld. Raym. 1524. Mart. Law Nat. 213. But, to entitle him to the character of secretary of legation, he must be appointed by his sovereign: if appointed by the minister, he is only a private secretary, and comes under the character of one of his domestics. In this case the certificate of Mr. Madison, so far from stating that he produced credentials from his master, implies the contrary, by stating that fact as to the minister, and not as to the secretary. Fourth, that the indictment does state him affirmatively to be secretary of legation, so as to be traversed; but merely that he is a gentleman attached to the legation, and performing the duties of a secretary of legation; this is too uncertain. 2 Hawk. P. C. bk. 2, c. 25, §§ 62, 72, 59. The second and third counts state him to be a public minister; which is an equivocal term. 4 Burrows, 2016.

Mr. Dallas admitted, that if the first assault was committed by De Lima, there was no ground for the prosecution; but, on the evidence, denied the fact.

WASHINGTON, Circuit Justice. The assault and battery is fully proved, and the question is, whether the defendant has justified it, in law or fact. The attorney has very candidly admitted, what the court intended to have stated to the jury; viz. that as to the law arising on the facts, the case stands upon the same ground as if the assault and battery had been committed on a citizen: that is, the prior assault of De Lima, if the jury should think he committed it, would excuse the battery by the defendant, whether De Lima were a public minister, or not entitled to that character. The whole cause, then, upon the merits, depends upon the credibility of two of the witnesses. If the one examined, on the part of the prosecution, be believed, then De Lima was guilty of no assault, and the battery cannot be justified. If, on the other hand, the witness for the defendant is believed, then the first assault was by De Lima, and your verdict should be in favour of the defendant. As to the points of law raised and discussed, it is unnecessary to give any opinion upon them to the jury. The objections, if good, appear on the indictment; and may be taken advantage of, on a motion to arrest the judgment, should the verdict find the defendant guilty.

The jury found a special verdict, that the defendant is guilty of the assault and battery as laid; that previous thereto, De Lima had been introduced to the president, (pro ut, Mr Madison's certificate,) but at the time of the assault and battery laid, the defendant did not know of such introduction.

The court afterwards gave the following opinion upon the special verdict found by the jury:

WASHINGTON, Circuit Justice. The question reserved for the opinion of the court, is, in effect, whether this case be within the operation of the twenty-eighth section of the act of congress [1 Stat. 1198], for the punishment of crimes against the United States; from the circumstance that Liddle did not know, at the time of the assault and battery, of which he was found guilty, that Don Ignatius De Lima was a public minister? This must depend upon the true construction of that section of the law; which, it must be admitted, is by no means free from ambiguity. It is contended by the counsel for the defendant, that assault, battery, &c. mentioned in this section, must be so coupled with the descriptive words which immediately follow, as to qualify and restrain their meaning, to those acts when done in violation of the law of nations; and if this position be right, the conclusion also is right; since it is not to be denied, that if the aggressor be ignorant of the character of the minister, the assault is not considered as an offence against the law of nations. The court was at first strongly inclined to adopt this construction; considering the words, "or in any other manner infract the law of nations," as implying, that the acts before mentioned were meant to be such as

did infract the law of nations. But, upon a more deliberate examination of the whole subject, we are satisfied, that the intention of the legislature corresponds with what we consider to be the liberal interpretation of the expressions used. Let it be recollected, that the constitution vests in the courts of the United States jurisdiction in all cases affecting ambassadors, other public ministers, and consuls. This delegation of jurisdiction to the tribunals of that government which is charged with all the foreign relations of the nation, and with the consequent duties to preserve its peace and honour, seems to have been proper and necessary; and in respect to those, at least, who represent the persons of their sovereigns. It follows, that the national judiciary, a branch of the general government, was peculiarly marked out for the decision of national questions. Hence, it is probable, that congress would perceive the propriety of occupying so much, at least, of the ground of jurisdiction granted by the constitution, as might be necessary for the general peace, and would leave no part of the subject of the cognisance of state tribunals, which might possibly involve the responsibility of the government.

Thus far as to the probable intention of the legislature. It is agreed, that a battery committed upon the person of a public minister, though his character be unknown to the aggressor, is a trespass for which the latter may be criminally or civilly punished. The trespass equally affects the minister, as if it had been committed scienter; and the commission of it might equally involve the peace of the nation; as, in general, the plea of ignorance would seldom be deemed a satisfactory excuse by the sovereign, offended in the person of his minister. As to cases which might produce such consequences, it is highly improbable, that congress could intend to make the degree of offence the criterion of jurisdiction, between the national and state tribunals. The words of the law, literally interpreted, seem to express, what we consider to have been the intention of the legislature. "If any person shall assault, strike, wound, or imprison the person of an ambassador, or other public minister," he commits an offence at common law, whether the character of the minister be known or not; and it is an offence, within this section of the law, for the purpose of giving jurisdiction to the federal courts. These acts of violence, on account of their enormity, and being principally in the view of the legislature, are of course specifically enumerated. But, as minor acts of violence might be committed against a foreign minister, which could not be so easily foreseen or described; and it was not intended, on the one hand, to punish every possible injury to the person of a foreign minister, nor. on the other hand, to leave every other than the specified acts unpunish-

ed; the legislature, as to those not specified, seems to have thought it proper to require, that they should be such only as infracted the law of nations. But the degree of punishment to be inflicted, upon conviction, resting in the breast of the court, the circumstances relied upon, to exclude this case from the jurisdiction of the court, would, nevertheless, form a proper subject of consideration, in deciding what the punishment shall be. It has, in this instance, had its influence upon us.