## IN RE BAIZ, Petitioner.

### ORIGINAL.

No. 11. Original. Argued March 31, April 1, 1890.—Decided May 5, 1890.

The Consul General of Guatemala and Honduras in New York, being a citizen of and resident in the United States, was accredited by the government of Honduras as its diplomatic representative here. The Secretary of State declined to receive him as such, on the ground that the immunities and privileges attaching to the office made it inconsistent and inconvenient that a citizen of the United States should "enjoy so anomalous a position." The Consul General then inquired whether the Department would regard him as chargé d'affaires *ad hoc* of Honduras, without relieving him of his duties and responsibilities as a citizen; to which the Department replied that it could not recognize his agency as con-

ferring upon him any diplomatic status. A diplomatic representative was then accredited to the United States from Guatemala, Honduras and Salvador, and was received as such. Three years later, being about to temporarily absent himself from his post, this representative requested the Secretary of State " to allow that the Consul General of Guatemala and Honduras in New York," the same person still holding that office, " should communicate to the office of the Secretary of State any matter whatever relating to the peace of Central America, which should without delay be presented to the knowledge of your Excellency." The reply of the Secretary, directed to " The Consul General of Guatemala and Honduras," stated that he would " have pleasure in receiving any communication in relation to Central America of which you may be the channel as intimated ; " and notes were subsequently interchanged between him and the Department, and *vice versa*, until the arrival of an accredited diplomatic representative. *Held*, that the Consul General of Guatemala and Honduras did not thereby become the diplomatic representative of Guatemala, Honduras and Salvador during the absence of the regularly accredited representative, and that, in the absence of a certificate from the Secretary of State that he was such representative, he was not entitled to the immunity from suit except in this court which is granted by the Constitution to such persons.

On an application to this court, by a person claiming a diplomatic privilege, for a writ of prohibition or a writ of mandamus, to restrain a district court from the exercise of its ordinary jurisdiction on the ground that the petitioner is a privileged person, the respondent is called upon to produce any evidence that exists to countervail the petitioner's proof of his privilege.

When a person claims in this court the rights and privileges of a foreign minister, the court has the right to accept the certificate of the Department of State that he is, or is not, such a privileged person, and cannot properly be asked to proceed upon argumentative or collateral proof.

THE case, as stated by the court, was as follows :

On the 29th day of June, 1889, an action was commenced by one John Henry Hollander in the District Court of the United States for the Southern District of New York against Jacob Baiz, to recover damages for the publication of an alleged libel upon the plaintiff, and a summons was served upon him on the 2d day of July of that year. The defendant entered a general appearance in the action, which was filed July 17, 1889. On the 25th day of September, 1889, the defendant verified his answer, which contained a plea to the jurisdiction of the District Court in the following language :

" The defendant alleges that he is now, and ever since the month of July, 1887, has been, the Consul General of the Re-

public of Guatemala at the city of New York, and that in or about the month of May, 1889, he received from the Republic of Guatemala a duly authenticated copy of a decree in the English language, dated at the National Palace in Guatemala, May 14, 1889, with instructions in writing from said government to publish the same in the newspapers of the United States, and which said decree had previously been published in the official *Gazette*, or newspaper, published in said republic, and that pursuant to such instructions, which were sent to him both by letter and by cable, and not otherwise, he did, on or about the 9th day of June, 1889, send to the managers of the Associated Press, in the city of New York, said authenticated copy of said decree, stating that it was possible that said managers would find it of sufficient interest to publish. That prior to the 16th day of January, 1889, one Señor Don Francisco Lainfiesta was envoy extraordinary and minister plenipotentiary of the Republic of Guatemala in the United States, and on or about that day he departed from the United States upon a temporary leave of absence, duly granted to him, and that from on or about that day, down to on or about the 10th day of July, 1889, this defendant became and was the acting minister and sole representative of the said Republic of Guatemala in the place, and during the absence, of the said envoy extraordinary and minister plenipotentiary, and was exclusively in charge of the diplomatic affairs of the said republic in the United States.

"And by reason of the facts herein alleged this defendant claims that this court has no jurisdiction of this action, and that if any jurisdiction for said act in fact exists in any court, it is vested solely in the Supreme Court of the United States, pursuant to the provisions of the Constitution and the statutes of the United States in such case made and provided."

In January, 1890, a motion was made "for an order setting aside the service of the summons and all subsequent proceedings in the action, and that the court dismiss the same, on the ground that it has no jurisdiction of this action, and had no jurisdiction over the defendant at the time of the commencement thereof." This motion was based on the defendant's

affidavit and upon proofs consisting of original written communications from the State Department to Baiz, and on duly-certified copies of papers on file in said department; and was resisted by the plaintiff on certain affidavits, and an original letter from the department. On the 17th day of February the motion was denied, and an application was then made to this court for a rule to show cause why a writ of prohibition should not issue to the judge of the District Court, prohibiting him from proceeding further in said action; or if a writ of prohibition could not issue, then for a rule to show cause why a writ of mandamus should not issue, commanding the judge to enter an order dismissing the cause, for the reason that the jurisdiction of said action existed solely in the Supreme Court under the Constitution and laws of the United States; or for such other and further relief as might be proper in the premises. The application was made upon the petition of the defendant in the action in the District Court, and annexed to the petition and forming a part of it was a certified copy of the entire record in the District Court, including every paper used upon the motion, and the opinion of the court. A rule having been issued, the judge of the District Court returned thereto that the motion was denied upon the facts and considerations appearing in the record and opinion, copies of which were attached to the petition, and to the order to show cause, and submitted to this court whether the District Court should take further cognizance of the said cause or should dismiss the same.

It appeared before the district judge, as it does here, that Mr. Baiz was and is a citizen of the United States and a resident of the city of New York, and that he has been since 1887 Consul General of Guatemala; that Señor Lainfiesta was, on the 16th day of January, 1889, the minister of Guatemala, of Salvador and of Honduras, in the United States, and that on that day Señor Lainfiesta addressed a note to the Secretary of State, advising him that he was compelled to go to Guatemala for a short time, and saying: "Meanwhile, I beg your Excellency to please allow that the Consul General of Guatemala and Honduras in New York, Mr. Jacob Baiz, should communicate to the office of the Secretary of State.

any matter whatever relating to the peace of Central America, that should without delay be presented to the knowledge of your Excellency."

The Secretary of State accordingly, on the 24th day of January, informed Señor Baiz, " Consul General of Guatemala and Honduras," that the note of Minister Lainfiesta had been received and that he would " have pleasure in receiving any communication, in relation to Central America, of which you may be made the channel, as intimated by Señor Lainfiesta." On the 6th of March, 1889, Mr. Blaine having been appointed Secretary of State, information of that fact was communicated by him to " Señor Don Jacob Baiz, in charge of the legations of Guatemala, Salvador and Honduras," the receipt of which was acknowledged by the latter under date of March 7, the note of reply being signed, " Jacob Baiz, Consul General." April 1, the Secretary of State addressed a communication to " Señor Don Jacob Baiz, in charge of the business of the legations of Guatemala, Salvador and Honduras," informing him of the appointment of Mr. Mizner as envoy extraordinary and minister plenipotentiary of the United States to the Republics of Guatemala, Salvador and Honduras, and asking him to " kindly apprise the governments of Guatemala, Salvador and Honduras " of the appointment.

In the official circular issued by the Department of State, " corrected to June 13, 1889," concerning the " foreign legations in the United States," under the heads of Guatemala, Salvador and Honduras, mention is made of the absence of Mr. Lainfiesta, and a foot-note is referred to which reads " Jacob Baiz, Consul General, in charge of business of legation, New York City." That circular shows that Russia, Austria and Corea were represented by ministers who were absent, and had chargés d'affaires *ad interim*, whose names are severally given, described as such, and the dates of their presentation. Brazil and Venezuela had no ministers, but were represented by a chargé d'affaires or a chargé d'affaires *ad interim*, the name of the incumbent and the date of his presentation being given in each of these instances. Portugal had

no minister, and the name appears of "Baron d'Almeirim, consul, and acting consul general, in charge of business of legation," and the fact and date of his presentation. Consul General Baiz is alone referred to in a foot-note, and is not shown to have been presented.

Señor Lainfiesta did not return as minister, and on or about the 10th day of July, 1889, Dr. Fernando Cruz arrived in this country and was presented by the Secretary of State to the President as the envoy extraordinary and minister plenipotentiary of the Republic of Guatemala to the United States.

Mr. Baiz answered in the action brought by Hollander September 25, 1889.

On the 3d of October, 1889, counsel for the plaintiff addressed to the State Department a letter, in which he inquired who was the minister of the State of Guatemala from January to August, 1889; and received an answer under date of October 4, 1889, signed by the Second Assistant Secretary of State, as follows:

"I have to acknowledge the receipt of your letter of the 3d inst., and to say in reply that Señor Fernando Cruz presented his credentials as the envoy extraordinary and minister plenipotentiary of Guatemala here, July 11, 1889.

"Prior to that Señor Lainfiesta was the accredited and recognized minister, but had been for some time absent from the United States. During his absence the business of the legation was conducted by Consul General Baiz, but without diplomatic character."

On the 11th of January, 1890, Señor Cruz sent the following communication to the State Department:

"Mr. Michael H. Cardozo, counsel for Don Jacobo Baiz, in the suit which has been brought against the latter by Mr. J. H. Hollander in New York, presented to your Excellency a brief of the facts in the case and made application to you to be pleased to order that he be furnished with a certain certificate in regard to the character of Mr. Baiz during the absence of Don Francisco Lainfiesta, and until I arrived to take his place.

"It being urgent to possess this document, since the day

approaches to make use thereof, and the government of Guatemala having instructed Mr. Baiz to make the publication upon which the suit is brought, under the belief that he was its representative in this country from the day of Señor Lainfiesta's departure, I take the liberty of begging your Excellency to be pleased to order that the certificate applied for by Mr. Cardozo be issued as soon as possible, and sent to me in order that I may forward it without loss of time."

The acting Secretary of State replied January 21, 1890, acknowledging the receipt of Señor Cruz's note of the 11th, and continuing thus :

"The facts are, that on January 16, 1889, Mr. Lainfiesta informed the Department of his proposed departure from the United States for Guatemala on a leave of absence. In conveying this information to the Secretary of State, Mr. Lainfiesta said : ' In the meantime I beg your Excellency to permit Mr. Jacob Baiz, Consul General of Guatemala and Honduras at New York, to communicate to the Department of State any information connected with the peace of Central America that may be of sufficient importance to be brought without delay to your Excellency's notice.' Referring to this note the Department, on January 24, 1889, wrote to Mr. Baiz, saying : ' The Secretary of State will have pleasure in receiving any communication in relation to Central America, of which you may be made the channel, as intimated by Señor Lainfiesta.' The next communication of the Department to Mr. Baiz bears date March 6, 1889, in which he was informed of the accession to office of the present Secretary of State, which Mr. Baiz acknowledged on the following day.

"On April 1st, 1889, the Department addressed a communication to Mr. Baiz, ' in charge of the business of the legations of Guatemala, Salvador and Honduras,' in which he was informed of the recall of Mr. Henry C. Hall, as envoy extraordinary and minister plenipotentiary of the United States to the Republics of Guatemala, Salvador and Honduras, and of the appointment by the President, by and with the advice and consent of the Senate, of Mr. Lansing B. Mizner to that post. Mr. Baiz was requested to apprise the respective governments

of this appointment. This communication Mr. Baiz acknowledged on April 2d, 1889. On May 17th, 1889, Mr. Baiz announced to the Department your appointment by the government of Guatemala as its minister plenipotentiary at this capital in place of Mr. Lainfiesta, which was duly acknowledged by the Department on the 20th of the same month. Subsequently correspondence took place between the Department and Mr. Baiz in relation to your entrance into the United States and to your reception as minister. On June 14, 1889, Mr. Baiz enclosed to the Department an autograph letter from the President of Guatemala dated May 20, 1889, to the President of the United States, relative to the recall of Mr. Hall as United States minister to the States of Central America. Of this communication the Department acknowledged the receipt, on June 25, 1889. This, it is believed, is a correct résumé of the facts in regard to Mr. Baiz' action as the representative of Guatemala in the absence of her duly accredited minister from the United States."

After the return to the rule, counsel appearing in opposition to granting the writ moved for an order that the petitioner show cause why certain papers presented by him should not be submitted for the consideration of the court in the determination of the matter; and the petitioner, after objecting to the granting of the order and protesting against the receipt of the papers, submitted certain papers on his part. These papers taken in chronological order are as follows: A letter dated February 2, 1886, from the Minister of Foreign Affairs of the Republic of Honduras to Mr. Baiz, transmitting an appointment as chargé d'affaires of the Republic of Honduras to the government of the United States, and hoping that he will accept said appointment, "filling it to the best interests of the country, endeavoring principally to prevent filibustering expeditions," etc., etc. Accompanying it was a communication addressed to the State Department under date of February 1, 1886, and conveying information of the fact of the appointment. This was presented to Mr. Bayard then Secretary of State, who replied on the 22d of March, 1886, as follows:

Statement of the Case.

"Agreeably to the promise made to you in person recently by Assistant Secretary Porter, I have considered the questions involved in your nomination as chargé d'affaires of Honduras in the United States.

"A difficulty arises in the fact stated by you to Mr. Porter, that you are a citizen of the United States. It has long been the almost uniform practice of this government to decline to recognize American citizens as the accredited diplomatic representatives of foreign powers. The statutory and jurisdictional immunities and the customary privileges of right attaching to the office of a foreign minister make it not only inconsistent, but at times even inconvenient, that a citizen of this country should enjoy so anomalous a position. The very few past exceptions to this rule have served to show its propriety, especially when, as in your case, it has been sought to supplement the consular functions (which an American citizen, may, if otherwise acceptable, hold with perfect propriety) by an added diplomatic rank and function.

"Were it merely a question of conducting public business with you as the *de facto* chargé d'affaires *ad interim* during the absence of a regularly accredited envoy of Honduras, there would be little difficulty. In fact, you now stand on that footing for all practical purposes, since the Department of State corresponds with you as consul general, upon whatever diplomatic business may arise; but it is to be borne in mind that this is done because the office of the envoy is for the time being unfilled. Your substitutionary agency is cheerfully admitted, but this is different from recognizing you as invested with the diplomatic character as the incumbent of the mission.

"While this motive would alone constrain me, although with regret, from acceding to the expressed desire of the government of Honduras and receiving you as its diplomatic representative, I find another consideration in the phraseology of your official letter of credence."

The Secretary then considers the objection arising out of the fact that that instrument "announces that the office of chargé d'affaires is conferred upon you for the express purpose

of negotiating with this government to prevent the organization in the United States of hostile expeditions against Honduras and causing certain persons named therein to be put under bonds, 'not to contrive in any way against the peace of Honduras.'"

The letter of credence and also the letter of the Honduranean Minister of Foreign Relations were returned.

On the 24th day of March, 1886, Consul General Baiz acknowledged the receipt of the dispatch of the 22d, and said:

"I will lose no time to inform the government of Honduras of our correspondence, and that Your Excellency has kindly consented to admit my substitutionary agency in the absence of a minister by virtue of my being the consul general.

"I thank you for this recognition, the extent of which I appreciate, but in order to fully satisfy the government of Honduras, which has conferred this honor on me, I take the liberty to ask whether, in the absence of a minister, the State Department will consider the consul general chargé d'affaires ad hoc, or as diplomatic agent of Honduras, for all practical as well as official purposes, without relieving me of duties and responsibilities incumbent on a citizen of the United States?

"The declination of the State Department of my credentials on the ground that they express a purpose of a negotiation not admissible under the laws of the United States will, no doubt, be satisfactory to the government of Honduras."

On the 3d day of April, 1886, the Secretary of State answered the inquiry of Mr. Baiz in these words:

"I have received your letter of the 24th ultimo, in which, after referring to the willingness expressed in my letter to you of the 22d March to admit, in the absence of a minister of Honduras, your substitutionary agency in virtue of your office as consul general, you enquire 'whether, in the absence of a minister, the State Department will consider the consul general chargé d'affaires ad hoc or as a diplomatic agent of Honduras for all practical as well as official purposes, without relieving' you 'of duties and responsibilities incumbent on a citizen of the United States.'

"In reply, I have to inform you that it is not the purpose of the Department to regard the substitutionary agency, which it cheerfully admits in your case, as conferring upon you personally any diplomatic status whatever. Your agency is admitted to be such only as is compatible with the continued existence of a vacancy in the diplomatic representation of Honduras in the United States. To recognize you as chargé d'affaires *ad hoc* would be to announce that the vacancy no longer existed, and that diplomatic representation was renewed in your person.

"It is a common thing to resort to a temporary agency, such as yours, in the conduct of the business of a mission. A foreign minister, on quitting the country, often leaves the affairs of his office in the friendly charge of the minister of another country, but the latter does not thereby become the diplomatic agent of the government in whose behalf he exerts his good offices. The relation established is merely one of courtesy and comity. The same thing occurs when the temporary good offices of a consul are resorted to. In neither case is a formal credence, *ad hoc* or *ad interim*, necessary."

*Mr. Joseph H. Choate* (with whom was *Mr. Michael H. Cardozo*) for the petitioner.

I. The object of the constitutional and statutory provisions respecting "ambassadors and other public ministers," (Const. Art. III. § 2; Rev. Stat. § 687,) was to prevent such person from being sued in any court save the highest court of the nation, trusting to it alone to determine whether the act complained of could be punished by any judicial tribunal "consistently with the law of nations."

II. This court has power to issue a writ of prohibition in the case now before it.

If the jurisdiction is exclusive in this court to entertain the suit now pending against the petitioner in the United States District Court, because of the position he occupied, then some writ to assert that jurisdiction and to prevent another court from exercising it, is necessary to the maintenance of the exclusive jurisdiction of this court. The writ which is "agreeable to the usages and principles of law" is primarily the writ of prohibition.

If there is any authority to issue it this is a fit case for the exercise of that authority. *Ex parte Phœnix Ins. Co.*, 118 U. S. 610, 625; *Smith* v. *Whitney*, 116 U. S. 167, 173.

III. If this court has no power to issue a writ of prohibition under § 716, then it may issue a writ of mandamus under § 688, Rev. Stat. It is elementary that a writ of mandamus is the proper remedy to require a court to assume jurisdiction of a case which properly belongs to it, or to decide a matter which is properly before it for judicial determination. *Hollon Parker, petitioner*, 131 U. S. 221; *Chateaugay Iron Co., petitioner*, 128 U. S. 544; *Ex parte Parker*, 120 U. S. 737; *Ex parte Morgan*, 114 U. S. 174; *Ex parte Burtis*, 103 U. S. 238; *Ex parte Railway Co.*, 101 U. S. 711; *Ex parte Flippin*, 94 U. S. 348, 350.

Assuredly, if a writ of mandamus is the proper remedy and will issue to compel a court to assume jurisdiction where it possesses it, it is also the proper remedy and should issue to compel a court to dismiss a case and refrain from attempting to exercise jurisdiction where it does not possess such jurisdiction.

At any rate, in this court, exercising its appropriate jurisdiction to entertain an application for a writ of prohibition or mandamus, the respondent here is called upon to produce any evidence that exists to countervail the petitioner's proof of his privilege.

IV. The right of a foreign minister, temporarily leaving this country, to designate some one to act as chargé d'affaires for the government he represents during his absence, is universally conceded.

Mr. Lainfiesta being about to leave this country on a temporary leave of absence, exercised that right and designated the petitioner to act in his place during such absence, and the petitioner did so act down to the time of the receiving of the new minister, Don Fernando Cruz, in July, 1889.

The State Department recognized the right of Mr. Lainfiesta, as exclusively it was vested with authority to do, to make such designation, and treated the defendant in a diplomatic character, from the time of Mr. Lainfiesta's departure to the time of the arrival of Dr. Cruz.

The State Department under date, March 6th, 1889, sent to the defendant as " In charge of the Legations of Guatemala, Salvador and Honduras," notice of the appointment of Mr. Blaine to his position as Secretary of State.

Such a communication is never made to those acting as consuls, but only to those exercising diplomatic functions.

The petitioner was not the Consul of Salvador, and yet he was recognized by the Department as representing not alone Guatemala and Honduras, of which he was consul, but also as representing Salvador.

Clearly it was only by reason of the recognition of our government of the fact that the petitioner was, by virtue of the letter of Mr. Lainfiesta, exercising diplomatic functions, that he was recognized by our government as in any way representing a country of which he was not even consul.

V. The authorities clearly and abundantly support the position here contended for by the counsel for the petitioner and show, manifestly, that in cases where the facts are not in any degree as strong as they are here indisputably shown to be, the courts of the United States have recognized that persons were acting in a diplomatic character. *United States* v. *Ortega*, 4 Wash. C. C. 531; *United States* v. *Liddle*, 2 Wash. C. C. 205; *United States* v. *Benner*, Baldwin C. C. 234.

VI. The authorities on International Law uniformly recognize the position which the petitioner occupied as one clothed with diplomatic functions. Woolsey's Int. Law, 4th. ed. (1876), 164; Wheaton's Int. Law, 8th. ed. (1866), § 215; Kent's Comm., on Int. Law, by Abdy, 129, 130; Hall's Int. Law, 2d. ed. (1884), 292, § 105; Davis' Int. Law, (1887), 144; Twiss' Law of Nations, (1884), 350, § 209; Levi's Int. Law, 118; Pomeroy's Int. Law, §§ 331, 410; Phillimore's Int. Law, 2d. ed. 2, § 220; Halleck's Int. Law, new ed. 274; Bouvier's Law Dic. Tit., " Chargé d'Affaires;" Heffter's Droit International Public de l'Europe, 388; Martens' Guide Diplomatique, 5th. ed. § 16, 61; Klüber, Droit des Gens Mod., § 182; 3 Pradier-Fodéré, Traité de Droit International Public, 113, § 1284; Ferd. De Cussy, Réglements Consulaires, 97; De Cussy, Dictionnaire du Diplomat et du Consul, 129;

1 De Clercq et De Vallat, Guide Pratique des Consulats, 4th. ed. 93; 3 Pasquale Fiore, Nouveau Droit International Public, traduit de l'Italien par Antoine, p. 49, § 1106; Das Europäische Völkerrecht der Gegenwart auf den bisherigen Grundlagen, von Dr. August Wilhelm Heffter, 6th ed. 395.

It is true that nowhere in the correspondence between the Department of State and the petitioner is he addressed with the technical title of "chargé d'affaires," but it is also true that the letter of Mr. Lainfiesta to the Department of State under date January 16th, 1889, clearly shows that the minister of the three Central American Republics, being about to leave temporarily this country, presented the petitioner to the Department of State as the person who was to be the medium of communication between the three Central American Republics and the United States during his absence; and the State Department in its letter to the petitioner, under date of January 24th, 1889, acknowledged the receipt of Minister Lainfiesta's communication and assented to his corresponding with our Department of State. Under all the authorities it is clear that the petitioner was, by this correspondence, made chargé d'affaires *ad interim*, of the three Central American Republics, during the absence of Minister Lainfiesta.

Because the Department of State did not use the technical French term of diplomacy, "chargé d'affaires," in addressing the petitioner, when informing him of the appointment of Mr. Blaine as Secretary of State, but addressed him with the English words "In charge of the Legations of Guatemala, Salvador and Honduras," or because the Department of State addressed the petitioner by the English phrase "In charge of the business of the Legations of Guatemala, Salvador and Honduras," when requesting him to do the distinctively diplomatic act of informing the three Central American Republics of the recall of Mr. Hall, our former minister, and of the appointment of Mr. Mizner, our new minister, can it be said that the use of the literal English translation of the French title of office deprived the petitioner of the position which, under all the authorities, he occupied?

It is the office, the discharge of the duty, the performance

of a diplomatic function which produce the privilege, and if the person claiming the privilege is shown to be duly invested with the authority to discharge the diplomatic functions and to be duly discharging the same, however the individual may be called, does not the privilege attach to the person? It is strictly because the person is authoritatively presented and received as the official representative of the foreign sovereign, and as the medium of its communication with ours that he has the privilege.

VII. It will be clear to the court that as to the Republic of Salvador, to which the petitioner bore no relation whatever prior to his appointment by Mr. Lainfiesta, his functions during Mr. Lainfiesta's absence could not possibly be anything but diplomatic functions, and that, of itself, is enough for the purposes of the petitioner's present application.

VIII. The question as to the jurisdiction of the District Court was properly raised by motion. The jurisdiction of the United States Courts being limited, unless the facts required to support the jurisdiction affirmatively appear, it is the duty of these courts to forthwith suspend proceedings and dismiss the action. Indeed, the presumption in every stage of the case is against their jurisdiction unless the contrary expressly appears from the record itself. *Chapman* v. *Barney*, 129 U. S. 677; *Börs* v. *Preston*, 111 U. S. 252; *Grace* v. *Am. Central Ins. Co.*, 109 U. S. 278; *Robertson* v. *Cease*, 97 U. S. 646.

*Mr. Robert D. Benedict* opposing.

Mr. Chief Justice Fuller delivered the opinion of the court.

The judicial power of the United States extends to "all cases affecting ambassadors, other public ministers, and consuls." Const. Art. III, sec. 2.

By section 687 of the Revised Statutes, it is provided that the Supreme Court "shall have exclusively all such jurisdiction of suits or proceedings against ambassadors, or other public ministers, or their domestics, or domestic servants, as a court of law can have consistently with the law of nations;

and original, but not exclusive, jurisdiction of all suits brought by ambassadors, or other public ministers, or in which a consul or a vice-consul is a party." By section 563, it is provided that "the District Courts shall have jurisdiction as follows: . . . Seventeenth. Of all suits against consuls or vice-consuls," except for certain offences. The petitioner has been, since July, 1887, the consul general of the Republic of Guatemala, and therefore the District Court had jurisdiction of the action in question, unless he belonged to the class of official personages subject to suits or proceedings only in this court. This he insists was the fact, and avers in his petition, as he did in his plea in the District Court, that at the time of the commencement of the action and until and including the 10th day of July, 1889, which was the eighth day after service of process upon him, he was "the acting minister and sole representative of said republic [of Guatemala] in the United States," and for that reason came within the words of section 687, "other public ministers."

The exemption asserted ceased on the 10th of July, 1889, and on the 17th of July the petitioner gave a general notice of appearance in the action, but did not set up the want of jurisdiction until the 25th of the following September. Suit could have been brought in that court against him on the 11th day of July, but as in his view this could not have been done on the 29th of June or the 2d of July, he contends that the District Court should be ordered to dismiss the suit, though it could at once be recommenced therein. But it is said that the appearance did not waive the right to be sued in this court rather than in the District Court, because that was the privilege of the country or government which he represented. Without pausing to inquire how far this is a correct application of the international privilege of not being sued at all, its assertion, even in this restricted form, serves to emphasize petitioner's contention that he was at that time the minister or diplomatic agent of the republics of Guatemala, Salvador and Honduras in the United States, entrusted by virtue of his office with authority to represent those republics in their negotiations and to vindicate their prerogatives.

Under section 2, Art. II, of the Constitution, the President is vested with power to "appoint ambassadors, other public ministers and consuls," and by section 3 it is provided that " he shall receive ambassadors and other public ministers."

These words are descriptive of a class existing by the law of nations, and apply to diplomatic agents whether accredited by the United States to a foreign power or by a foreign power to the United States, and the words are so used in section 2 of Art. III. These agents may be called ambassadors, envoys, ministers, commissioners, chargés d'affaires, agents, or otherwise, but they possess in substance the same functions, rights and privileges as agents of their respective governments for the transaction of its diplomatic business abroad. Their designations are chiefly significant in the relation of rank, precedence or dignity. 7 Opinions Attys. Gen. (Cushing), 186.

Hence, when in subdivision fifth of section 1674 of the Revised Statutes we find "diplomatic officer" defined as including " ambassadors, envoys extraordinary, ministers plenipotentiary, ministers resident, commissioners, chargés d'affaires, agents and secretaries of legation, and none others," we understand that to express the view of Congress as to what are included within the term " public ministers," although the section relates to diplomatic officers of the United States.

But the scope of the words "public ministers " is defined in the legislation embodied in Title XLVII, " Foreign Relations," Rev. Stat., 2d ed. 783. Section 4062 provides that " every person who violates any safe conduct or passport duly obtained and issued under authority of the United States ; or who assaults, strikes, wounds, imprisons or in any other manner offers violence to the person of a public minister, in violation of the law of nations, shall be imprisoned for not more than three years, and fined, at the discretion of the court." Section 4063 enacts that whenever any writ or process is sued out or prosecuted by any person in any court of the United States, or of a State, or by any judge or justice, whereby the person of any public minister of any foreign prince or state, authorized and received as such by the President, or any domestic or domestic servant of any such minis-

ter, is arrested or imprisoned, or his goods or chattels are distrained, seized or attached, such writ or process shall be deemed void. Section 4064 imposes penalties for suing out any writ or process in violation of the preceding section; and section 4065 says that the two preceding sections shall not apply to any case where the person against whom the process is issued is a citizen or inhabitant of the United States "in the service of a public minister," and process is founded upon a debt contracted before he entered upon such service; nor shall the preceding section apply to any case where the person against whom the process is issued is a "domestic servant of a public minister," unless the name of the servant has been registered and posted as therein prescribed.

Section 4130, which is the last section of the title, is as follows: "The word 'minister,' when used in this title, shall be understood to mean the person invested with, and exercising, the principal diplomatic functions. The word 'consul' shall be understood to mean any person invested by the United States with, and exercising, the functions of consul general, vice-consul general, consul or vice-consul."

Sections 4062, 4063, 4064 and 4065 were originally sections 25, 26, 27 and 28 of the Crimes Act of April 30, 1790, c. 9, 1 Stat. 118; and these were drawn from the statute 7 Anne, c. 12, which was declaratory simply of the law of nations, which Lord Mansfield observed, in *Heathfield* v. *Chilton*, 4 Burrow, 2015, 2016, the act did not intend to alter and could not alter.

In that case, involving the discharge of the defendant from custody, as a domestic servant to the minister of the Prince Bishop of Liége, Lord Mansfield said: " I should desire to know in what manner this minister was accredited — certainly, he is not an ambassador, which is the first rank — envoy, indeed, is a second class; but he is not shown to be even an envoy. He is called 'minister,' 'tis true; but minister (alone) is an equivocal term." The statute of Anne was passed in consequence of the arrest of an ambassador of Peter the Great for debt, and the demand by the Czar that the sheriff of Middlesex and all others concerned in the arrest should be punished with instant death, 1 Bl. Com. 254; and it was in reference to this

that Lord Ellenborough, in *Viveash* v. *Becker*, 3 M. & S. 284, where it was held that a resident merchant of London, who is appointed and acts as consul to a foreign prince, is not exempt from arrest on mesne process, remarked: "I cannot help thinking that the act of Parliament, which mentions only 'ambassadors and public ministers,' and which was passed at a time when it was an object studiously to comprehend all kinds of public ministers entitled to these privileges, must be considered as declaratory, not only of what the law of nations is, but of the extent to which that law is to be carried."

Three cases are cited by counsel for petitioner arising under or involving the act of 1790. In *United States* v. *Liddle*, 2 Wash. C. C. 205, in the case of an indictment for an assault and battery on a member of a foreign legation, it was held that the certificate of the Secretary of State, dated subsequently to the assault and battery, is the best evidence to prove the diplomatic character of a person accredited as a minister by the government of the United States. The certificate from the Secretary of State, Mr. Madison, stated that "when Mr. Feronda produced to the President his credentials as chargé des affaires of Spain, he also introduced De Lima, as a gentleman attached to the legation and performing the duties of secretary of legation," and the certificate was held to be the best evidence to prove that Feronda was received and accredited, and that at the same time De Lima was presented and received as secretary attached to the legation. In *United States* v. *Ortega*, 4 Wash. C. C. 531; there was produced in court an official letter from the Spanish minister to the Secretary of State, informing him that he had appointed Mr. Salmon chargé d'affaires; a letter from the minister to Mr. Salmon; a letter from the Secretary of State addressed to the Spanish minister, recognizing the character of Mr. Salmon; two letters from the Secretary of State addressed to Mr. Salmon as chargé d'affaires; and the deposition of the chief clerk of the State Department that Mr. Salmon was recognized by the President as chargé d'affaires, and was accredited by the Secretary of State. In *United States* v. *Benner*, Baldwin, 234, the court was furnished with a certificate from the Secretary of State that the

Danish minister had by letter informed the Department· that Mr. Brandis had arrived in this country in the character of attaché to the legation, and that said Brandis had accordingly, since that date, been recognized by the Department as attached to the legation in that character.

These cases clearly indicate the nature of the evidence proper ·to establish whether a person ·is a public minister within the meaning of the Constitution and the laws, and that the inquiry before us may be answered ·by such evidence, if adduced.

·Was Consul General Baiz a person "invested·with and exercising the principal diplomatic functions," within section 4130, or. a "diplomatic officer," within section· 1674? His counsel claim in their motion that he was "the acting minister or chargé d'affaires of the Republics of Guatemala, Salvador and Honduras in the United States," and so recognized by the State Department, and that he exercised diplomatic functions as such, and therefore was a public minister, within the statute.

By the Congresses of Vienna and Aix-la-Chapelle four distinct kinds of representation were recognized, of which the fourth comprised chargés d'affaires, who are appointed by the minister of foreign affairs, and not as the others, nominally or actually by the sovereign. Under the regulations of this government the representatives· of the United States have heretofore been ranked in three grades, the third being chargés d'affaires. Secretaries of. legation act *ex officio* as chargés d'affaires *ad interim*, and in the absence of the secretary of legation the Secretary of State may designate any competent person to act *ad interim*, in which case· he is specifically accredited by letter to the minister for foreign affairs.

Wheaton says: "Chargés d'affaires, accredited to the ministers of foreign affairs of the court at which they reside, are either chargés d'affaires *ad hoc*, who are originally sent. and accredited by their governments, or chargés d'affaires *per interim*, substituted· in the place of· the minister of their respective nations during his absence." Elements Int. Law (8th ed.), § 215.

Ch. de Martens explains that " [1] chargés d'affaires *ad hoc* on permanent mission are accredited by letters transmitted to the minister of foreign affairs. Chargés d'affaires *ad interim* are presented as such by the minister of the first or second class when he is about to leave his position temporarily or permanently." Guide Diplomatique, Vol. 1, p. 61, § 16.

"They," observes Twiss in his Law of Nations, § 192, "are orally invested with the charge of the embassy or legation by the ambassador or minister himself, to be exercised during his absence from the seat of his mission. They are accordingly announced in this character by him before his departure to the minister of foreign affairs of the court to which he is accredited."

Diplomatic duties are sometimes imposed upon consuls, but only in virtue of the right of a government to designate those who shall represent it in the conduct of international affairs, 1 Calvo, Droit Int. 586, 2d ed. Paris 1870, and among the numerous authorities on international laws, cited and quoted from by petitioner's counsel, the attitude of consuls, on whom this function is occasionally conferred, is perhaps as well put by De Clercq and De Vallat as by any, as follows:

[2] "There remains a last consideration to notice, that of a consul who is charged for the time being with the management of the affairs of the diplomatic post; he is accredited in this case in his diplomatic capacity, either by a letter of the minister of foreign affairs of France to the minister of foreign affairs of the country where he is about to reside, or by a letter of the diplomatic agent whose place he is about to fill, or finally by a personal presentation of this agent to the minister of foreign affairs of the country." Guide Pratique des Consulats, Vol. 1, p. 93.

---

[1] Les Chargés d'affaires *ad hoc*, en mission permanente, sont accrédités par des lettres remises au ministre des affaires étrangères. Les chargés d'affaires *ad interim* sont présentés comme tels par le ministre de première ou 2de Classe lorsqu'il se dispose à quitter son poste temporairemc .. ou définitivement.

[2] Il reste une dernière supposition à prévoir : celle où un consul est chargé provisoirement de la gestion des affaires d'un poste diplomatique; il est

That it may sometimes happen that consuls are so charged is recognized by section 1738 of the Revised Statutes, which provides:

"No consular officer shall exercise diplomatic functions, or hold any diplomatic correspondence or relation on the part of the United States, in, with, or to the government or country to which he is appointed, or any other country or government, when there is in such country any officer of the United States authorized to perform diplomatic functions therein; nor in any case, unless expressly authorized by the President so to do."

But in such case their consular character is necessarily subordinated to their superior diplomatic character. "A consul," observed Mr. Justice Story, in *The Anne*, 3 Wheat. 435, 445, "though a public agent, is supposed to be clothed with authority only for commercial purposes. He has an undoubted right to interpose claims for the restitution of property belonging to the subjects of his own country; but he is not considered as a minister, or diplomatic agent of his sovereign, intrusted, by virtue of his office, with authority to represent him in his negotiations with foreign states, or to vindicate his prerogatives. There is no doubt that his sovereign may specially intrust him with such authority; but in such case his diplomatic character is superadded to his ordinary powers, and ought to be recognized by the government within whose dominions he assumes to exercise it."

When a consul is appointed chargé d'affaires, he has a double political capacity; but though invested with full diplomatic privileges, he becomes so invested as chargé d'affaires and not as consul, and though authorized as consul to communicate directly with the government in which he resides, he does not thereby obtain the diplomatic privileges of a minister. Atty. Gen. Cushing, 7 Opinions, 342, 345.

accrédité, dans ce cas, en sa qualité diplomatique, soit par une lettre du ministre des affaires étrangères de France au ministre des affaires étrangères du pays où il doit résider, soit par une lettre de l'agent diplomatique qu'il doit remplacer, soit enfin par la présentation personelle de cet agent au ministre des affaires étrangerès du pays.

This is illustrated by the ruling of Mr. Secretary Blaine, April 12, 1881, that the Consul General of a foreign government was not to be regarded as entitled to the immunities accompanying the possession of diplomatic character, because he was also accredited as the "political agent" so-called of that government, since he was not recognized as performing any acts as such, which he was not equally competent to perform as Consul General. 1 Whart. Dig. Int. Law, 2d ed. c. 4, § 88, p. 624.

We are of opinion that Mr. Baiz was not, at the time of the commencement of the suit in question, chargé d'affaires *ad interim* of Guatemala, or invested with and exercising the principal diplomatic functions, or in any view a "diplomatic officer." He was not a public minister within the intent and meaning of § 687; and the District Court had jurisdiction.

The letter of Señor Lainfiesta of January 16, 1889, was neither an appointment of Mr. Baiz as chargé d'affaires *ad interim*, nor equivalent to such an appointment. It was a request in terms that the Secretary of State would "please allow that the Consul General of Guatemala and Honduras, in New York, Mr. Jacob Baiz," should communicate to the office of the Secretary of State any matters relating to the peace of Central America of which that department ought to be informed without delay. This is not the language of designation to a representative position, and is the language designating a mere medium of communication; and the reply of Mr. Secretary Bayard so treats it, in declaring that the department would be pleased to receive any communication in relation to Central America of which Consul General Baiz might be made the channel. This reply is addressed to Mr. Baiz as "Consul General of Guatemala and Honduras," and not as chargé d'affaires *ad interim*. The mere fact that the usual note conveying the information to the legations of Mr. Secretary Blaine's accession chanced to be addressed to "Señor Don Jacob Baiz, in charge of the legations of Guatemala, Salvador and Honduras," was not a recognition that he was chargé d'affaires *ad interim*, or exercising diplomatic functions; and Mr. Baiz in acknowledging the receipt of that

announcement properly signs his letter "Consul General." It may be that such announcements are not sent to any but those exercising diplomatic functions; but this courtesy could not operate as in itself a deliberate recognition of the right to exercise such functions, nor that the person to whom the communication was addressed was in such exercise as a matter of fact. It was entirely proper, since Consul General Baiz was the channel of communication between Guatemala, Honduras and Salvador and the State Department, that the notification should be sent to him, and even if that course had not been usual, the courtesy could not be availed of to impart a character which the recipient did not otherwise possess.

The proofs show that of ten letters from the State Department to Mr. Baiz, between January 16 and July 10, 1889, two were addressed to him as in charge of the legations, or the business of the legations, of Guatemala, Salvador and Honduras; two were addressed to him as Consul of Honduras; and six as Consul General of Guatemala, or Guatemala and Honduras. Of seven letters from Mr. Baiz to the department, one was signed Jacob Baiz, and six, Jacob Baiz, Consul General. The acknowledgment of notice of the accession of the Secretary of State, and of the appointment of Mr. Mizner, and the transmission of a letter from the President of Guatemala, and the announcement of the appointment of Minister Cruz, by the Consul General, can hardly be regarded as the performance of diplomatic functions as such.

The official circular issued by the Department of State, corrected to June 13, 1889, gives the names and description of the chargés d'affaires *ad interim*, in the case of countries represented by ministers who were absent and of countries having no minister, and the date of their presentation. In the instance of Portugal, the name is given of "Consul and acting Consul General, in charge of business of legation," and the fact of the presentation with the date appears in the list; while in the instance of Guatemala, Salvador and Honduras, the name of Mr. Baiz is referred to in a foot-note, with the title of Consul General only; nor does it appear, nor is it claimed to be the fact, that he was ever presented. As stated by

counsel, Mr. Webster took the ground, in the case of M. Hülse-mann, that as chargé d'affaires he was not, as matter of strict right, entitled to be presented to the President; and this is in accordance with the regulations of the State Department. Cons. Reg. 13. But such presentation is undeniably evidence of the possession of diplomatic character, and so would be the formal reception of a chargé d'affaires *ad interim* by the Secretary of State. The inference is obvious, that if the Department of State had regarded Mr. Baiz as chargé d'affaires *ad interim*, or as "invested with and exercising the principal diplomatic functions," his name would have been placed in the list, with some indication of the fact, as the title of chargé, or, if he had been presented, the date of his presentation. Nor can a reason be suggested why the petitioner has not produced in this case a certificate from the Secretary of State that he had been recognized by the Department of State as chargé d'affaires *ad interim* of Guatemala, or as intrusted with diplomatic functions, if there had been such recognition. A certificate of his status was requested by the Guatemalan minister, and if the State Department had understood that Mr. Baiz was in any sense or in any way a "diplomatic representative," no reason is perceived why the Department would not have furnished a certificate to that effect; but instead of that, it contented itself with a courteous reply, giving what was in its judgment a sufficient résumé of the facts, the letter being in effect a polite declination to give the particular certificate desired, because that could not properly be done.

Mr. Baiz was a citizen of the United States and a resident of the city of New York. In many countries it is a state maxim that one of its own subjects or citizens is not to be received as a foreign diplomatic agent, and a refusal to receive, based on that objection, is always regarded as reasonable. The expediency of avoiding a possible conflict between his privileges as such and his obligations as a subject or citizen, is considered reason enough in itself. Wheaton, 8th ed. § 210; 2 Twiss, Law of Nations, 276, § 186; 2 Phill. Int. Law, 171. Even an appointment as consul of a native of the place where

consular service is required, is, according to Phillimore "perhaps, rightfully pronounced, by a considerable authority, to be objectionable in principle." Vol. II. p. 291, citing De Martens & De Cussey, Recueil des Traités, Index explicatif, p. XXX, tit. "Consuls."

[1] "Other powers," says Calvo, vol. 1, p. 559, 2d ed., "admit without difficulty their own citizens as representatives of foreign States, but imposing on them the obligation of amenability to the local laws as to their persons and property. These conditions, which, nevertheless, ought never to go so far as to modify or alter the representative character, ought always to be defined before or at the time of receiving the agent; for otherwise, the latter might find it impossible to claim the honors, rights and prerogatives attached to his employment." See also Heffter, 3d Fr. ed. 387.[2]

In the United States, the rule is expressed by Mr. Secretary Evarts, under date of September 19, 1879, thus: "This government objects to receiving a citizen of the United States as a diplomatic representative of a foreign power. Such citizens, however, are frequently recognized as consular officers of other nations, and this policy is not known to have hitherto occasioned any inconvenience." And again, April 20, 1880, while waiving the obstacle in the particular instance, he says: "The usage of diplomatic intercourse between nations is averse to the acceptance, in the representative capacity, of a person who, while native born in the country which sends him, has yet acquired lawful status as a citizen by naturalization of the country to which he is sent." 1 Wharton Dig. Int. Law 2d ed. § 88a, p. 628. Of course the objection would

---

[1] D'autres puissances admettent sans difficulté leurs nationaux comme représentants d'États étrangers, mais, en leur imposant l'obligation de rester soumis aux lois territoriales pour leurs personnes et pour leurs biens. Ces conditions, qui cependant ne sauraient jamais aller jusqu'à modifier ou à altérer le caractère représentatif, doivent toujours être exprimées avant ou au moment de recevoir l'agent; car autrement celui-ci se trouverait dans l'impossibilité de revendiquer les honneurs, les droits, et les prérogatives attachés à son emploi.

[2] En pareil cas le consentement du gouvernement étranger est indispensable, et ce consentement peut être conditionel et limité.

not exist to the same extent in the case of designation for special purposes or temporarily, but it is one purely for the receiving government to insist upon or waive at its pleasure. The presumption, therefore, would ordinarily be against Mr. Baiz's contention, and, as matter of fact, we find that when in 1886, he was appointed chargé d'affaires of the Republic of Honduras to the government of the United States, Mr. Secretary Bayard declined receiving him as the diplomatic representative of the government of that country, because of his being a citizen of the United States, and advised him that : "It has long been the almost uniform practice of this government to decline to recognize American citizens as the accredited diplomatic representatives of foreign powers. The statutory and jurisdictional immunities and the customary privileges of right attaching to the office of a foreign minister make it not only inconsistent, but at times even inconvenient, that a citizen of this country should enjoy so anomalous a position." And in a subsequent communication rendered necessary by a direct question of Mr. Baiz, the Secretary informs him "that it is not the purpose of the department to regard the substitutionary agency, which it cheerfully admits in your case, as conferring upon you personally any diplomatic status whatever." This correspondence disposes of the question before us. The objection which existed in 1886 to the reception of Mr. Baiz as chargé d'affaires *ad hoc* or *ad interim*, or according to him any diplomatic status whatever, whether temporary or otherwise, existed in 1889; and it is out of the question to assume that the State Department intended to concede the diplomatic status between January 16 and July 10, 1889, upon the request of Señor Lainfiesta that Consul General Baiz might be allowed to be a medium of communication during his absence, which it had refused to accord to the Republic of Honduras itself. It is evident that the statement of the Assistant Secretary, October 4, 1889, was quite correct, that "the business of the legation [of Guatemala] was conducted by Consul General Baiz, but without diplomatic character."

It is objected that we ought not to have allowed these

official papers to come before us, but should have prohibited the District Court from exercising jurisdiction, because the evidence that established it had not all been before that court when the question was raised; but the rule governing this class of cases involves no such consequences. The district judge was of opinion that inasmuch as there were two kinds of direct evidence which would show that the defendant was a "public minister," to wit: (1) A certificate of the Secretary of State that he was such, was received as such and was exercising such functions; or (2) proof of the exercise by the defendant of "the principal diplomatic functions," under some one of the titles of diplomatic office, as recognized by our statutes and the law of nations; and as such direct evidence had not been furnished, and the plaintiff was not required to produce his counter evidence on a motion like that under consideration instead of at the trial, he was justified in retaining jurisdiction until the issue raised by the pleadings was regularly determined. But to this latter suggestion, counsel for petitioner answered in argument: "At any rate, in this court, exercising its appropriate jurisdiction to entertain an application for a writ of prohibition or mandamus, the respondent here is called upon to produce any evidence that exists to countervail the petitioner's proof of his privilege." This is undoubtedly the correct view. The question here is whether the District Court had jurisdiction, and not whether its order refusing to set aside the service of summons and the subsequent proceedings in the action, and dismissing the same, should be reversed.

The practice in prohibition was formerly to file a suggestion, an affidavit in support of which was required where the prohibition was moved for upon anything not appearing upon the face of the proceedings. Upon a rule to show cause, if it appeared to the court, on cause shown, that the surmise was not true, or not clearly sufficient to ground the prohibition upon it would be denied, otherwise the rule would be made absolute: or, if the matter were doubtful, the party was ordered to declare, and issue joined on such declaration was regularly tried, being in the nature of an issue to inform the conscience

of the court. 2 Sellon's Practice, 313, 321, 325. And in mandamus, if the case were not governed by the return to the alternative writ, but a traverse of the return was allowed, issues were made up and a trial had. If the matter can be disposed of upon the rule to show cause, that course may be pursued, but the applicable principles are the same. The alleged want of jurisdiction depends upon questions of fact. It was purely discretionary whether this evidence should be admitted at the time it was presented; and in a proceeding involving the inquiry under consideration, it was plainly our duty to permit it to come in, the petitioner being afforded, as he was, the opportunity for explanation and the introduction of such other evidence as he chose to produce.

In *Ex parte Hitz, Petitioner*, 111 U. S. 766, which was an application for a writ of certiorari, commanding the Supreme Court of the District of Columbia to certify to this court an indictment and the proceedings thereunder, on the ground that, when the indictment was filed and when the offences therein charged were committed, he was the diplomatic representative of the Swiss Confederation, the court directed a preliminary inquiry, and, in doing so, Mr. Chief Justice Waite said: " As it is conceded that the petitioner is not now in the diplomatic service of Switzerland, and was not when all the proceedings in the Supreme Court of the District of Columbia subsequent to the indictment were had, counsel are directed to request the Secretary of State to certify whether John Hitz was at any time accredited to and recognized by the government of the United States as public or political agent or chargé d'affaires of the Republic of Switzerland, and if so, for what period of time, and up to and including what date." The counsel having complied with that request, the court upon receiving the information as to what the records of the department showed, dismissed the petition.

Regarding the matter in hand as, in its general nature, one of delicacy and importance, we have not thought it desirable to discuss the suggestions of counsel in relation to the remedy, but have preferred to examine into and pass upon the merits.

We ought to add that while we have not cared to dispose

of this case upon the mere absence of technical evidence, we do not assume to sit in judgment upon the decision of the executive in reference to the public character of a person claiming to be a foreign minister, and therefore have the right to accept the certificate of the State Department that a party is or is not a privileged person, and cannot properly be asked to proceed upon argumentative or collateral proof.

Our conclusion is, as already stated, that the District Court had jurisdiction, and we accordingly discharge the rule and

*Deny the writs.*