## THE ADRIATIC.

### (Circuit Court of Appeals, Third Circuit.   June 7, 1919.)

### No. 2463.

1. ADMIRALTY ⊂═72—INTERNATIONAL LAW ⊂═10—COMITY.
   On principles of international comity, a United States court is bound to accept a suggestion of the British ambassador that the British government requisitioned a certain British ship at a certain time.

2. INTERNATIONAL LAW ⊂═10—BRITISH SHIP—COMITY.
   A United States court, in a libel against a British ship, on suggestion by the British ambassador, appearing as amicus curiæ, that the ship has been duly requisitioned by the British government, is not at liberty to consider the question of the validity of the requisition, or to consider a claim by libelant, alleging breach of a charter party, that the British government did not have power to requisition the vessel, because the vessel at the time was on the high seas.

3. ADMIRALTY ⊂═39—COMITY—DISMISSAL WITHOUT PREJUDICE.
   Where a United States court, hearing a libel of a British ship based on an alleged breach of a charter party, cannot consider the questions involved by reason of the British ambassador having suggested that the vessel was duly requisitioned by the British government, it will dismiss the proceedings without prejudice to the right of the libelant to institute another action in some court which is in a position to pass upon the question of the validity of the suggested requisition.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Libel in rem by H. Baars & Co. and the Export Terminal & Shipping Company against the British steamship Adriatic, and in personam against the owners, W. H. Cockerline & Co., to recover damages. From a decree in favor of the respondents (253 Fed. 489), the libelants appeal. Affirmed.

Howard T. Kingsbury and Frederic R. Coudert, both of New York City, for British Embassy.

Willard M. Harris, of Philadelphia, Pa., and John C. Avery, of Pensacola, Fla., for appellants.

John M. Woolsey, of New York City, Howard H. Yocum, of Philadelphia, Pa., and Harry D. Thirkield, of New York City, for appellees.

Before BUFFINGTON, WOOLLEY, and HAIGHT, Circuit Judges.

HAIGHT, Circuit Judge.  H. Baars & Co., a corporation of Delaware, filed in the court below a libel in rem against the British steamship Adriatic, and a libel in personam against the owners, W. H. Cockerline & Co., a British concern, to recover damages which it

claimed to have sustained by reason of an alleged breach of a charter party that had been entered into, on September 28, 1916, between the owners of the steamship and the Export Terminal & Shipping Company, and which had been assigned by the latter to the libelants prior to the alleged breach. The original charterer subsequently, by petition of intervention, became a colibelant in the suits. The charter was for a single voyage from an American port to a European port, and was to become effective upon the arrival of the vessel at the port of Philadelphia, Pa., where orders were to be given at once by the charterers. On November 8, 1915, while the vessel was on the high seas, the Transport Division of the British Admiralty notified the owners in England, by telegram, which was confirmed by letter sent to them the following day, that the ship had been requisitioned for government service. Instructions, to be given to the master when the vessel should reach Philadelphia, were also cabled to the British consul general at Philadelphia. Although the owners endeavored to have the requisition canceled and the vessel released, they were unsuccessful. She reached Philadelphia on November 28, 1915, and on the next day the master was notified by the British consul general that she had been requisitioned, and he was given certain instructions as to her further movements, which, with the concurrence of the owners, he obeyed, and which made it impossible for the vessel to fulfill the charter. The vessel remained continuously in the government service from that time until she was lost at sea about a year later.

Before the case came on for trial, but long after the vessel had been released from arrest under bond given by the owners, a suggestion was filed by counsel for the British Embassy, appearing as amici curiæ, to the effect, among other things, that the steamship, which was of British registry and belonged to subjects of Great Britain, had been "duly requisitioned by the British Admiralty, which is an integral part of the government of the United Kingdom of Great Britain and Ireland," and that the requisition was "a governmental action by the government of Great Britain, and should not be inquired into by" the court in which the cause was pending. Considerable testimony was taken by the respondents as to the legality of the requisition and as to the effect of a refusal by the master of the vessel or the owners to obey the instructions of the Admiralty and of the British consul general at Philadelphia, and as to what the British government could have done to compel obedience to them. No testimony was offered by the libelants on any of these points.

[1] The learned judge of the court below, feeling that under the circumstances he should decline to adjudicate "any claim of right advanced by the libelants" which grew out of the requisitioning of the vessel by the British government, dismissed the libels. Thereupon the libelants appealed. In addition to the before-mentioned suggestion filed in the court below, there has been filed in this court, under the hand of the British ambassador and the seal of the British Embassy, a certificate wherein are set forth the same facts as were set forth in the suggestion, and an express avowal again made that the requisition of the steamship was "a governmental act by the government of Great

Britain and Ireland." On principles of international comity, we feel bound to accept the suggestion and avowal of the British ambassador as conclusively establishing both the fact of the requisition and its governmental character. Such has been the practice, as to similar facts, of the English courts (The Parlement Belge, L. R. 5 P. D. 197; The Constitution, L. R. 4 P. D. 39), and quite generally of the courts of this country. See The Marpo (D. C. S. D. N. Y.) 252 Fed. 627; Agency of Can. Car & F. Co. v. American Can Co. (D. C. S. D. N. Y.) 253 Fed. 152; The Roserie (D. C. N. J.) 254 Fed. 154, where the suggestions were made directly by counsel for an embassy, and The Exchange, 7 Cranch, 116, 3 L. Ed. 287, where it was made through the attorney for the United States.

It must be considered as established, therefore, that the vessel was actually requisitioned by the British government, acting through the Admiralty, before the time arrived for her to perform the charter. The charter party contained the following clause, viz.: "If vessel be requisitioned by the British Admiralty, this charter is to be null and void." As the vessel was requisitioned by the British Admiralty, that provision of the charter party would seem to relieve absolutely the owners from any liability growing out of her failure to perform the charter. The libelants contend, however, that it does not have that effect, because, as it is claimed, the British Admiralty had no power, under the English law, to requisition the vessel when the attempt to do so was made, because she was then upon the high seas and not within the British Isles or the waters adjacent thereto. Of course, that contention, if correct, to have any effect, must necessarily be predicated upon the assumption that the provision in question of the charter party referred only to such requisitions of the British Admiralty as should be strictly legal and in accordance with the laws of Great Britain, as distinguished from requisitions which might in fact be made by the Admiralty, but which were beyond its legal power and authority to make.

[2] Assuming, for purposes of argument only, that such is a proper construction of the charter party, it is apparent that, if the vessel was legally requisitioned, no liability attached to the respondents by reason of the failure of the vessel to thereafter perform the charter, because, upon such a requisition, the charter party, by its express terms, became null and void. But, in accordance with the rule that "the courts of one independent government will not sit in judgment on the validity of the acts of another done within its own territory," it is not within the province of a court of this country to attempt to determine whether the requisition of the vessel was valid or invalid under the laws of Great Britain; it must be here accepted as legal, or, as it is sometimes expressed, such a question is not justiciable. Ricaud v. American Metal Co., 246 U. S. 304, 309, 38 Sup. Ct. 312, 62 L. Ed. 733; Underhill v. Hernandez, 168 U. S. 250, 253, 18 Sup. Ct. 83, 42 L. Ed. 456; American Banana Co. v. United Fruit Co., 213 U. S. 347, 357, 29 Sup. Ct. 511, 53 L. Ed. 826, 16 Ann. Cas. 1047; Oetjen v. Central Leather Co., 245 U. S. 297, 303, 38 Sup. Ct. 309, 62 L. Ed. 726; The Invincible, 2 Call. 29, Fed. Cas. No. 7,054; Hewitt

v. Speyer, 250 Fed. 367, 162 C. C. A. 437 (C. C. A. 2d Cir.); Earn Line S. S. Co. v. Sutherland S. S. Co. (D. C. S. D. N. Y.) 254 Fed. 126. Hence it follows that, even if the charter party be construed as libelants must have it construed to raise the question of the validity of the requisition, no cause of action accrued to them from the failure of the vessel to perform the charter, so far as the courts of this country are at liberty to determine. This conclusion has rendered it unnecessary for us to consider or decide any of the other questions which have been raised.

[3] The decree will accordingly be affirmed, with costs. However, in order that there may be no possible misunderstanding in the future as to the effect of the decree, we deem it proper to expressly state, what we think is necessarily to be inferred from the action of the court below, that the libels are dismissed without prejudice to the right of the libelants to institute another action in any court which is in a position to pass upon the question which, as above stated, we have not felt at liberty to inquire into.