## THE ROGDAI.

(District Court, N. D. California, First Division. May 25, 1920.)

No. 16824.

1. **Constitutional law ⬉68(1)—Court may not pass on rights of factions of foreign government to recognition, where State Department has recognized one.**

A court of admiralty *held* without jurisdiction to determine the right to a vessel, admittedly the property of the Russian nation, as between the so-called Russian Socialist Federal Soviet Republic, claiming to be the Russian government, but which has not been recognized by the United States, and the Russian government as represented by its duly accredited ambassador, received and still recognized as such by the United States government, and who is in actual possession of the vessel.

⬉For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. International law ⚫➡10—Jurisdiction may be questioned by foreign representative.**

A suggestion that the court should not take jurisdiction of a cause because it involves questions of national policy, within the province of the political department, may be received from the duly accredited representative of a foreign country, though it should properly come from the appropriate executive department of our own government.

In Admiralty. Suit by the Russian Socialist Federal Soviet Republic, and Ludwig C. A. K. Martens, as its representative, against the steamer Rogdai. On motion to discharge attachment. Granted.

See, also, 279 Fed. 130.

Austin Lewis and R. M. Royce, both of San Francisco, Cal., for libelants.

Ambrose Gherini, Nathan H. Frank, and Irving H. Frank, all of San Francisco, Cal., for Russian Government, etc.

DIETRICH, District Judge. This is an action in rem, brought against and to secure the possession of the Rogdai (or Rogday), a steamer lying in San Francisco Bay, state of California. By the bill it is represented that the libelant "Russian Socialist Federal Soviet Republic" is a sovereign nation, and that it is the owner of the vessel, and that the other libelant, Ludwig C. A. K. Martens, is its agent and representative in the United States, duly authorized to act in its behalf. Process of attachment issued, by virtue of which the steamer was seized and is now held in custody by the marshal. The "Russian Government" and Boris Bakhmeteff, appearing specially, move for an order dissolving the writ of attachment. The motion is supported by "suggestion," signed by Boris Bakhmeteff, and under the seal of the Russian Embassy at Washington, accompanied by a certificate duly executed by the Department of State of the United States, on April 6, 1920, certifying that Boris Bakhmeteff was formally received by the President as the duly accredited Ambassador Extraordinary and Plenipotentiary of Russia to the United States, on July 5, 1917, and that he has continuously since that date been recognized as such by the government of the United States, and further that the government has not received or recognized Ludwig C. A. K. Martens in any representative capacity, "nor has the so-called Russian Socialist Federal Soviet Republic been recognized in any way by the government of the United States."

By the "suggestion" it is shown that the Rogdai is a "Russian naval transport under the command of Mili Gordener, a lieutenant commander in the Russian navy," that she was purchased for Russia in the United States on July 20, 1917, that thereafter under an agreement with the ambassador she was used by the United States government in prosecuting the war with Germany, and that on the 6th day of October, 1919, with the written consent of the Secretary of State of the United States, she was again taken over by the Russian Embassy at Washington, and was in its possession and under its control at the time of her seizure by the marshal. No counter showing is

⚫➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

made by the libelants, except in so far as the averments in the libel to the effect that the "Russian Socialist Federal Soviet Republic" is Russia, or the Russian government, may be considered as such.

[1] It will be noted that fundamentally there is no controversy touching the real ownership of the transport; she belongs to Russia; no adverse claim, either public or private, is involved. By Russia, of course, I do not refer to any particular political group or organization, but to the national entity or sovereignty. It follows that the issue is reduced to the simple question whether the Russian nation is represented by Ludwig C. A. K. Martens and the organization back of him or by Boris Bakhmeteff and the group for which he speaks. Plainly, consideration of such an issue upon the merits would of necessity draw us into the realm of international diplomacy; and it is equally plain that no useful purpose could be subserved by such an investigation. If the court assumes the right to make an original inquiry, it logically follows that it must exercise its own independent judgment upon the facts thus disclosed and reach an independent conclusion. In that view it might recognize Martens, while Washington recognizes Bakhmeteff. To state the proposition is to discredit it. True, the Russian sovereignty may speak through different representatives, and it may have business agents as well as diplomatic agents; but all must derive their authority from a single source. The national will must be expressed through a single political organization; two conflicting "governments" cannot function at the same time. By the same token, discordant voices cannot express the sovereign will of the American nation. Either the executive or the judiciary must be supreme in a given sphere.

The question at issue is one of state; it involves international relations, and is primarily for the State Department. If, as contended by libelants, it be granted that a revolution has taken place in Russia, and that the Soviet Republic is in actual control, the question when, if at all, such de facto government shall be recognized, is a political one. It involves considerations of national policy, which are not justiciable, and touching it the voice of the Chief Executive is the voice, not of a branch of the government, but of the national sovereignty, equally binding upon all departments. Accordingly it must be held that the courts are powerless to grant the relief which the libelants seek. It is to be reiterated that we are not here concerned with the claim of a third party, either public or private, to the property in controversy, nor have we a case where the Department of State has failed to act, or where it is sought only to protect a party in actual possession. The case is one where the court is asked to take property conceded to be that of the Russian nation from the actual possession of those whom the State Department unmistakably recognizes as the accredited agents of the Russian government, and turn it over to other persons whom that department has declined to recognize as having any official standing whatsoever.

[2] In assuming the correctness of the facts exhibited by the "suggestion" of the Russian Embassy and the certificate of the Secretary of State, I have not been unmindful of the objection interposed

by libelants to the reception and consideration of these documents. The competency of the certificate as proof of the facts therein set forth is hardly open to question, and I have already held the facts to be material. The objections to the "suggestion" are overruled with less confidence. I am inclined to the view that logically the representations made in the "suggestion" should come through the appropriate executive channels of the American government. As we have seen, the gist of the objection to the suit, and particularly to the attachment process, is that the controlling questions involved affect national policies, touching which the authority of the State Department is supreme. But if, in so far as such policies are concerned, the courts are to defer to such authority, they should be advised of the executive will directly and from an authoritative source, and such source the foreign government may call into activity through appropriate diplomatic channels. The Florence H. (D. C.) 248 Fed. 1012, 1017. But the procedure here followed is not without precedent, and in view of the fact that the attitude of the State Department is unmistakably shown, though not approving of the practice, I have thought it proper under the circumstances to receive and give credit to the "suggestion." Whether the statements of fact made therein are or are not conclusive is a question which need not be decided, for libelants have tendered nothing in rebuttal.

In the main the judicial decisions cited in the briefs for both parties are obviously distinguishable, but for convenience of possible reference those thought to be most nearly in point are here noted: The Luigi (D. C.) 230 Fed. 495; The Johnson Lighterage Co. (D. C.) No. 24, 231 Fed. 365; The Attualita, 238 Fed. 909, 152 C. C. A. 43; The Florence H. (D. C.) 248 Fed. 1012; The Roseric (D. C.) 254 Fed. 154; The Adriatic, 258 Fed. 902, 169 C. C. A. 622; Agency of Con. Car & F. Co. v. Am. Car Co. (D. C.) 253 Fed. 155; Id., 258 Fed. 368, 169 C. C. A. 379, 6 A. L. R. 1182; The Conception, 6 Fed. Cas. No. 360; King of Spain v. Oliver, Fed. Cas. No. 7,814, 2 Wash. C. C. 429; Christensen v. Rogday, No. 16,797, this court;[1] The Gagara, [1919] Prob. Div. 95; The Dora, [1919] Prob. Div. 105, 88 L. J. P. [1919] 101, 107; The Exchange v. McFaddon, 11 U. S. (7 Cranch) 116, 3 L. Ed. 287; Thorington v. Smith, 75 U. S. (8 Wall.) 1, 19 L. Ed. 361; The Sapphire, 78 U. S. (11 Wall.) 167, 20 L. Ed. 127; The Davis, 77 U. S. (10 Wall.) 15, 19 L. Ed. 875; Williams v. Bruffy, 96 U. S. 176, 24 L. Ed. 716.

The motion is allowed, and an order will be entered discharging the attachment.

[1] 279 Fed. 130.