## ROYAL ITALIAN GOVERNMENT v. NATIONAL BRASS & COPPER TUBE CO., Inc.*

(Circuit Court of Appeals, Second Circuit.  November 5, 1923.)

No. 15.

**1. Sales ⊂⇒156—Delivery on wharf stringpiece delivery "alongside steamer."**

Delivery in piles at wharf stringpiece constituted delivery "alongside steamer," within sales contract, and title passed, though there was no steamer at that place; the contract not naming any particular steamer.

**2. Contracts ⊂⇒147(1)—Intention of parties must control.**

The intention of the parties to a contract must control, and the terms of the contract, the conduct of the parties, the usages of the trade, and the circumstances of the case may be considered to ascertain such intention.

**3. Payment ⊂⇒85(1)—Recovery where made by mistake.**

Recovery may be had for money paid by mistake, where it is based on the supposition that the specific fact is true, which would entitle the other to the money, but which fact is untrue, and the money would not have been paid, if the untruth had been known.

**4. Payment ⊂⇒84(4)—No recovery for mistake of law.**

Recovery of payment cannot be had for mistake of law, such as misinterpretation of a contract.

**5. Ambassadors and consuls ⊂⇒5½, New, vol. 8A Key-No. Series—Foreign government bound by contracts of agents.**

Where a foreign government's agents come to this country and enter into commercial contracts, they are obligated to the terms and conditions of such contracts as are other persons and private corporations.

In Error to the District Court of the United States for the Southern District of New York.

Action by the Royal Italian Government, to recover moneys paid under an alleged mistake of fact, against the National Brass & Copper Tube Company, Inc.  Judgment was rendered for one payment and disallowed on another.  Both parties sued out writs of error.  Reversed, with directions.

Samuel F. Frank and Arthur W. Weil, both of New York City, for plaintiff.

Harlan F. Stone and Johnson & Galston, all of New York City (Clarence G. Galston and E. H. Sykes, both of New York City, of counsel), for defendant.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge.  The parties will be referred to herein as plaintiff and defendant.  The plaintiff contracted, through its representative, with the defendant, for the purchase of certain brass discs under terms which are necessary to refer to.  The contract was made on July 15, 1917, by one Gen. Tozzi, a member of the Italian Military Mission during the great war, on behalf of the plaintiff.  It provided for the sale of 3,000 long tons of discs of certain dimensions and quality.  Inspection to take place at the seller's factory by the Italian Mission, and it was to issue, before delivery, an inspector's certificate.  The contract also contained the following clauses:

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 44 Sup. Ct. —, 68 L. Ed. —.

"Delivery.—Delivery shall be made by the seller f. a. s. New York City, or Philadelphia, or Baltimore, in the option of the buyer. In case, however, the buyer directs delivery at any other Atlantic seaboard port of the United States or Canada, seller shall so deliver and buyer shall pay the excess, if any, of the freight to such point over the highest freight to either of such ports; or if the freight be less than the smallest freight to either of said ports named the difference shall be allowed or returned by seller to buyer.

"Not less than eight hundred and twenty-five (825) tons of discs shall be delivered in each of the several months of July, August, September, and October, 1917, and delivery shall be completed on or before October 31, 1917.

"The deliveries shall be made in approximately equal weekly quantities of about two hundred (200) tons per week.

"The seller may in its option anticipate deliveries provided herein."

Payment was to be made under a letter of credit—

"upon presentation of invoices with inland bills of lading and proof of delivery alongside steamer at New York City, Philadelphia, or Baltimore, or other port as above provided, together with certificate of inspection and weight certificate, all of which documents shall be presented to Gen. Pasquale Tozzi, or a person named by him, at his office in the city of New York, and countersigned by him before payment."

Provision was made for a waiver of the countersignature, upon failure to countersign within three days, and for storage in case of the inability of the shipper, in which event title was to pass to the buyer, but the risk should be that of the seller until delivery f. a. s. New York, Philadelphia, or Baltimore; and it was provided that, in case of delay, only part of the price was to be paid on storage, and the remaining percentage paid on proof of delivery alongside the steamer at designated ports. Time was made the essence of the agreement, and in case the seller failed for any reason to make any of the monthly deliveries of 825 tons or failed to make complete delivery of the whole, on or before October 31, 1917, various options were open to the buyer. The seller agreed to sublet in case of being late in deliveries, and provisions for the termination of the agreement at the end of the war, or at a general armistice, before delivery of all of the discs contracted for had been completed, with provision for payment of expenditures upon the discs, the delivery of which had been canceled. Delivery was to be free alongside steamer, without any name of a steamer being given. After the contract was made, the plaintiff opened an irrevocable letter of credit, providing for payment upon presentation of shipping documents and invoices evidencing a shipment of discs. Payment became subject to the approval of Gen. Tozzi.

Before the shipments in question were made, Gen. Tozzi wrote to the defendant directing it to ship goods to "Gen. Pasquale Tozzi, c/o G. Schiaffino & Co., 220 North Eutaw street, Baltimore;" and shipments were made pursuant to these directions on straight bills of lading. The railroad company sent the usual notice of arrival to the consignee, namely, the Italian Mission. There was paid in this manner four payments, aggregating in excess of $800,000. Payments were made in each instance upon presentation of the bill of lading, weigher's certificate, inspector's certificate, and railroad's notice of arrival. On October 30, 1917, there were delivered at a pier of the Baltimore & Ohio Railroad at Locust Point, Baltimore, two different quantities of discs, the first quantity of which was 128 cases, sold at $34,990.04,

and the second quantity, 560 cases, sold at $170,709.50. A fire occurred on October 30th, and destroyed all of these cases of discs. On October 25th, the invoices and other documents with reference to the first quantity of discs destroyed were presented to Capt. Savina at New York for approval. By his direction, his assistant countersigned, and payment was made by its bankers on October 26, 1917. It is shown that the plaintiff had actual knowledge of the place on the wharf where the discs were placed at the time of this payment.

The order for payment of the second quantity was drawn October 29, 1917, and on October 31, 1917, documents in connection with this second quantity shipped, and which were also destroyed, were presented and countersigned pursuant to Capt. Savina's instructions. This was the day after the fire, and payment was made on that day. The original authorization of the bank on October 29, 1917, contained no stamp of the Mission, but the copy produced by the Italian government contained at the bottom, "New York, October 31, 1917, Gen. Pasquale Tozzi." The defendant was not requested to, nor did it, furnish proof of the arrival alongside the steamer; and, as was the practice between the parties theretofore, the only notice of arrival at export pier was that given by the Baltimore & Ohio Railroad Company. Upon arrival notices were accepted by Gen. Tozzi. Arrival notices of all the discs in question were sent on October 13, 16, 24, and 29, 1917, and were received by the Mission one or two days after the date of the notice. These cases were unloaded at Locust Point pier, about 6 or 7 feet from the stringpiece of the pier at which the steamer would stand. The railroad company was obliged to furnish lighters to place the goods upon the ships if loaded amid-stream, or at any other place if required. After the fire, the plaintiff filed a claim against the railroad company for the loss. Later the plaintiff sold, and the defendant purchased, some of the salvaged discs. No steamer had arrived at the pier when the fire occurred.

The case was tried before the court and a jury of one. The District Judge thereafter rendered his opinion, in which he denied a recovery to the plaintiff for the value of the first quantity, and granted recovery for the value of the second quantity, destroyed. It was held that "free alongside the steamer" meant free of charges alongside the particular steamer which would take the goods. In his opinion, the District Judge considered the question of a mistake as to the passage of title, a mistake as to the goods, waiver and modification of the terms of the contract, as well as the authority of the agents of the Military Mission.

[1] We think the question here is purely one of whether or not delivery was made as intended by the parties pursuant to the terms of the contract. If such delivery was made, payments made for the discs must stand, and the plaintiff may not succeed on either claim. If not, the plaintiff may succeed as to each payment made. The phrase, we think, means an actual delivery alongside. But it is claimed that there was no steamer at the wharf where the goods were deposited. The cases were actually conveyed to the wharf, removed from the cars, and piled at the wharf stringpiece on October 26th and October

28th, respectively. This was a delivery alongside any steamer sent to that point, and when the parties paid for the discs after notices of arrival, as had been their practice in their dealings theretofore, we think that the plaintiff complied with the requirements of the contract, which entitled it to payment on proof of delivery "alongside steamer." Schiaffino & Co. were the agents of the Italian Mission, and were in charge of the disposal of the merchandise which arrived at this pier in Baltimore. The discs were sent to Gen. Tozzi in their care. The contract does not name any particular steamer, but the discs were deposited within reach of the tackle of a steamer. In the absence of the mention of some particular steamer, or other explanatory clause, there were no specific directions as to the point of delivery, and a reasonable interpretation would mean some export pier which was used by the Italian Mission. No expert evidence is offered attempting to show what the phrase "free alongside steamer" meant.

[2] We think the contract itself and the conduct of the parties must be our guide. The intention of the parties must control. The terms of the contract, the conduct of the parties, the usages of the trade, and the circumstances of the case may be considered to ascertain such intention. Ceballos v. United States, 214 U. S. 47, 29 Sup. Ct. 583, 53 L. Ed. 904; Personal Property Law, § 100, rule 5, as added by Laws 1911, c. 571. The contract contemplated deliveries by the seller running over a period of four months in weekly quantities of 200 tons. The penalties imposed as above referred to contemplated monthly amounts. The parties could not have contemplated a ship which the buyer did not bind itself to furnish, and if the seller placed the discs at a designated wharf, where ships might reach them with their tackle, we think it did all that was required of it within the contemplation of the contract to make delivery. Delivery, under which title would pass, covered acts which were within the power of the seller to perform, and did not rest upon additional acts, which the buyer might or might not perform, and in respect to which it undertook no obligation. In the theretofore business conduct of the parties, it was not insisted upon, as a requirement of payment, that the discs were actually alongside steamer. Indeed, payments both before and after the fire were made upon evidence that the cases were at the wharf ready for ocean shipment.

The bills of lading in the buyer's name were delivered and accepted before the fire. The Mission having possession of them, it could have shipped the cases or not have shipped them as it saw fit. It might have removed the discs or resold them. It was the only one then who was interested. It was within its power to order the ship alongside the wharf, or to have the goods carried by lighter and put aboard in mid-stream. The claim of the plaintiff merely is that the discs must be actually alongside the ship, and that it is not enough to have it within reach of the ship's tackle. The subsequent conduct of the parties is important as showing their intentions. The plaintiff filed its claim with the railroad company for the loss sustained by the destruction of all the cases of discs. Subsequently it made payments upon deliveries such as had taken place in the instant case. If the

freight had not been paid, the obligation was made for the seller to pay the freight. But it was undoubtedly the mutual intention to transfer and receive possession at Locust Point pier when payment was made, and then it was that title passed.

[3] There was no mistake of fact. The facts were known when payment was made. The only want of knowledge was that of Capt. Savina that the discs had been destroyed when he countersigned the papers authorizing payment by the bankers. But if the discs had been delivered in accordance with the contract requirements, or as modified by the action of the parties, that fact is immaterial. Recovery may be had for money paid by mistake, where it is based upon the supposition that the specific fact is true which would entitle the other to the money, but which fact is untrue, and the money would not have been paid if the untruth had been known. United States v. Barlow, 132 U. S. 281, 10 Sup. Ct. 77, 33 L. Ed. 346.

[4, 5] There was a transfer of possession of the discs in question, with the intention of the parties that, when the cases arrived at Baltimore, they were to be placed at an ocean pier within reach of the ship's tackle. Title had passed, and the burden of the loss must fall upon the buyer. No mistake of fact appears, which affects the situation. There is no failure of consideration which might assist the plaintiff to a recovery. It is apparent that officers of the Mission paid for and were contented to pay for the goods, even though they were not actually alongside the steamer. No action may be based upon an alleged mistake of Gen. Tozzi and his fellow members of the Mission, who might erroneously have thought that they were required to pay, or were justified in paying, on presentation of the arrival notices, together with information from Schiaffino. If there was a mistake in this regard, it was a mistake of law, for which no recovery may be had. No recovery may be had for misinterpretation by the plaintiff of the contract.

The plaintiff, being a sovereign power, will not be relieved of the consequences of the acts, stipulations, commissions, or omissions of its agents. It is only where the courts deem it necessary to uphold the sovereign power of the government that it yields to the political situation, and permits the government to be relieved of the consequences of the acts, omissions and agreements of its agents. In doing this, they have chosen the lesser of two evils, in order to strengthen the arm of the sovereign government. No such necessity or propriety exists where a foreign government's agents come to this country and enter into commercial contracts. They are obligated to the terms and conditions of such contracts, as are other persons and private corporations. It cannot be questioned that Gen. Tozzi's power as representative of the Italian government in the purchase of these necessary war supplies granted to him the power to make a particular interpretation of the contract, and by that interpretation and practice flowing therefrom to make known the intentions of the plaintiff as expressed in the contract.

We are referred to an expression used in the case of Kokomo Steel & Wire Co. v. Republic of France (C. C. A.) 268 Fed. 917, as to what

is meant by "free alongside steamer." There the court said that in that particular case the seller engaged to deliver "free alongside ocean steamer New York City," and that the goods remained the property of the seller until delivery at the designated place. There the seller agreed to deliver "free alongside steamer New York City," and the buyer agreed to pay five days after presentation of documents showing delivery as aforesaid. A dispute arose as to the time of payment, and the seller declined to make further deliveries except upon sight drafts attached to bills of lading. The buyer went into the market in New York, and purchased wire to cover the seller's shortage, and then sued for the difference between the market and contract prices. The case is not an authority for the claim of the plaintiff that a delivery on the intended pier was not a delivery f. a. s. We are also referred to Moore v. United States, 196 U. S. 165, 25 Sup. Ct. 202, 49 L. Ed. 428, where the goods were to be delivered "at wharf" and "as customary," respectively. There the contract called for the delivery of the goods at wharf or on wharf, which was not done, and proof was taken as to the custom at the port of destination, which was Honolulu. The court found that the custom there required the actual placing of the goods on the wharf, and that this controlled, although the custom was somewhat different at the port of shipping, which was San Francisco.

It is significant that in the case at bar, Gen. Tozzi directed and required the shipping of the goods care of his agents Schiaffino & Co. in Baltimore. Thus it is seen that delivery alongside the actual steamer was not contemplated; otherwise, it would have been easy to consign the merchandise to the Mission itself at Baltimore, and thus it would have been in position to see that the discs were placed alongside the steamer when brought to port. This means either that Gen. Tozzi considered the contract as requiring the buyer and not the seller to place the goods alongside a specific steamer, or that, if the contract did not mean that, the General nevertheless desired the delivery of the goods to be made to him in that manner, and intended to and did, in fact, accept their delivery upon arrival on pier. It was evident that the plaintiff intended to supervise the handling of the goods after their arrival at Baltimore. That may have been the purpose of Schiaffino's appointment as agent. It also appears that large quantities of freight accumulated at this pier for shipment to Italy, thus accommodating their convenience as to loading ships with the freight.

Therefore the plaintiff will not prevail on its writ of error, and the judgment on the writ of error of the defendant will be reversed, and the District Court is directed to enter a judgment for the defendant in conformity with this opinion.

Judgment reversed.

HOUGH, Circuit Judge, heard the argument and concurred in the conclusion reached, but has not seen the opinion as prepared, because of necessary absence.