## UNITED STATES v. DEUTSCHES KALISYNDIKAT GESELLSCHAFT et al.

District Court, S. D. New York. January 5, 1929.

des Potasses d'Alsace is an organization created and controlled by the Republic of France for the purpose of administering potash mines, some of which the French Republic acquired on the cession of Alsace-Lorraine by the treaty of Versailles in 1919, and some of which belong to French nationals, and that the suit commenced against the Société Commerciale des Potasses d'Alsace and its officers and agents was in fact begun against the French government.

Thereafter the French ambassador addressed to this court a statement whereby he certified that since the treaty of Versailles the Republic of France has operated its potash mines in Alsace; that the proceeds from the sale of potash from these mines go into the revenue of the Republic of France and are applied to governmental purposes; that the Société Commerciale des Potasses d'Alsace was organized by direction of the French government to act as sales agent in disposing of the product of these government mines, and of a few mines owned by French nationals; that eleven-fifteenths of its capital stock is owned by the French government; that its governing board, on which there is a delegate from each of the ministries of Agriculture, Public Works, Finance, and Commerce, is controlled by the French government; that the French government considers the Société Commerciale and its employees instrumentalities employed in the sale of its potash, and that the suit mentioned is, in effect, a suit against the Republic of France.

There has also been submitted a letter from the Secretary of State of the United States to the Attorney General, stating that it has long been the view of the Department of State that agencies of foreign governments engaged in ordinary commercial transactions in the United States enjoy no privileges or immunities not appertaining to other foreign corporations, agencies, or individuals doing business here, and that they should conform to the laws of this country governing such transactions, and that none of the French defendants has any consular or diplomatic status in this country.

Affidavits also disclose that the Republic of France, in its capacity of owner of the 11 mines known as Mines Domaniales de Potasses d'Alsace, and the Société Anonyme Mines de Kali Sainte-Therese and three other mining corporations, caused the defendant Société Commerciale des Potasses d'Alsace to be organized to act as sales agent of the product of their mines; that the business of the corporation's New York office is to sell the product of all the mines and to transmit

John G. Sargent, Atty. Gen., William J. Donovan, Asst. Atty. Gen., Alexander B. Royce, of New York City, Russell Hardy, of Washington, D. C., Porter R. Chandler, of Buffalo, N. Y., Israel B. Oseas, of New York City, and Bethuel M. Webster, Jr., of Washington, D. C., for the United States.

Gilbert H. Montague, Charles K. Carpenter, Joseph W. Goodwin, and John K. Holbrook, Jr., all of New York City, for defendants.

BONDY, District Judge. This is a motion made by the ambassador of France and the defendants Société Commerciale des Potasses d'Alsace, Jean Le Cornec, Pierre Gide, Rene Gide, and Walter B. Howe to set aside the service of process upon the said defendants. They contend that they are not amenable to the service, and that the court is without jurisdiction to proceed against them.

The suit was brought by the United States to enjoin violations of the anti-trust laws by the defendants other than the ambassador. After the suit was begun, the French ambassador wrote to the Secretary of State of the United States that the Société Commerciale

the proceeds to France, where they are immediately divided and the proceeds of sale of potash belonging to the French government are immediately put into the treasury of the French government and used for governmental purposes.

When the motion was first argued, the French ambassador had not joined in the motion made by the other defendants to set aside the service. Subsequently the ambassador endeavored to join them in their motion, but had not become a party to the suit. Finally the ambassador, reaffirming that all French defendants are instrumentalities of the French government, employed in the sale of its potash, and that the suit is in effect against the Republic of France, and that defendants are immune from suit and judicial process, asked leave to intervene on behalf of the Republic of France. Upon the granting of his application, he asked that the service of the writs of subpœna be set aside and the returns quashed, and also for such other relief as may be just and proper.

The defendants refer to the fact that the International Economic Conference at Geneva in 1927 recommended that when a government, in times of peace, carries on or controls any commercial enterprise, it shall not, in its character as such, and in so far as it participates in enterprises of this kind, be treated as entitled to any sovereign immunities from liabilities to which similar privately owned undertakings are subject. They also refer to the fact that the treaty existing between Germany and the United States, like article 281 of the treaty of Versailles, provides that, if the German government engages in international trade, it shall not in respect thereof have or be deemed to have any rights, privileges, or immunities of sovereignty.

The defendants contend that such recommendation and provision would be meaningless, were it not a principle of international law that a sovereign state and its agents engaged in commercial enterprises enjoy immunity from liability to suit. They contend that the Société Commerciale and its agents are entitled to immunity because they are engaged in performing what the Republic of France considers a governmental function, and deny that a sovereign state by carrying on a commercial enterprise to that extent abandons its sovereign immunity and subjects itself to judicial process.

The defendants cite numerous cases involving ships of war (The Exchange, 7 Cranch, 116, 3 L. Ed. 287), merchant ships owned by a foreign state and employed in the carrying trade (Berizzi Brothers Co. v. S. S. Pesaro, 271 U. S. 562, 46 S. Ct. 611, 70 L. Ed. 1088; The Maipo [D. C] 259 F. 367), merchant ships owned and operated by others but appropriated by a foreign state to a use which it considers a public use (The Roseric [D. C.] 254 F. 154; The Adriatic [C. C. A.] 258 F. 902; Parlement Belge, L. R. 5 P. D. 197), which establish conclusively that the courts will not exercise jurisdiction over the person of a foreign sovereign or the person of his ambassador, and that they will not indirectly implead a foreign state or sovereign by proceeding against property within their jurisdiction, owned by a foreign state or appropriated by a foreign state to a use which such foreign state considers public or governmental, no matter by whom owned or operated.

These cases involve the jurisdiction of the courts over an instrumentality of a foreign government, consisting of property within the territorial jurisdiction of the court, but do not involve, like the case under consideration, the jurisdiction of the courts to enjoin others than a sovereign or his representatives from performing acts within the jurisdiction of the United States in violation of the laws of the United States.

Most, if not all, of the numerous American and English cases relied on by the defendants in their briefs, disclose that immunity was based on the sovereign or diplomatic character of the person before the court, or on governmental ownership, or on the governmental use to which property within the jurisdiction of the court was put. Immunity was not made dependent upon whether or not the person before the court was performing within the territorial jurisdiction of the court functions which the foreign sovereign considered public or governmental.

■ The person of the foreign sovereign and those who represent him are immune, whether their acts are commercial (Compania Mercàntil Argentina v. United States Shipping Board, 93 L. J. R. 1924, p. 816; see, also, 2 C. J. 1303), tortious, criminal, or not, no matter where performed. Their person and property are inviolable. No one else enjoys such immunity. What a sovereign state regards as a governmental function often has been considered by the courts but only in order to determine whether property within the jurisdiction of the court has been devoted by a foreign state to a public use.

The defendants repeatedly quote the statement made by Judge Hough in The Maipo (D. C.) 259 F. 367, approved by the United States Supreme Court in Berizzi

Brothers Co. v. S. S. Pesaro, 271 U. S. 562, 576, 46 S. Ct. 611, 613 (70 L. Ed. 1088): "If the Republic of Chile considers it a governmental function to go into the carrying trade, as would appear to be the case here, that is the business of the Republic of Chile; and if we do not approve of it, if we do not like it, if we do not wish any longer to accord that respect to the property so engaged, which has hitherto been accorded to government property, then we must say so through diplomatic channels, and not through the judiciary."

Judge Hough considered what functions a foreign state regarded as governmental, only to determine whether the property in this jurisdiction was devoted to a public purpose. In Royal Italian Government v. National Brass & Copper Tube Co. (C. C. A.) 294 F. 23, certiorari denied 264 U. S. 587, 44 S. Ct. 402, 68 L. Ed. 863, though the case did not involve the question of jurisdiction, the court, of which he was a member, held that, where a sovereign government's agents come to this country and enter into commercial contracts, they are obligated to the terms and conditions thereof, as are other persons and private corporations.

The extent to which such immunity is granted has been well stated in The Parlement Belge, L. R. 1880, 5 P. D. 197, 217, relied on by defendants: "As a consequence of the absolute independence of every sovereign authority and of the international comity which induces every sovereign state to respect the independence of every other sovereign state, each and every one declines to exercise by means of any of its courts any of its territorial jurisdiction over the person of any sovereign or ambassador of any other state, or over the public property of any state which is destined to its public use, or over the property of any ambassador, though such sovereign, ambassador, or property be within its territory, and, therefore, but for the common agreement, subject to its jurisdiction."

Société Commerciale was organized, like any other business corporation, under the general corporation laws of France. Its stockholders include private persons, as well as officials. It sold potash for others, as well as for the Republic of France. The law under which it was incorporated, as well as its certificate of incorporation, provide that it may be sued. It thereby was stripped of any sovereign immunity it otherwise may have enjoyed. See Bank of U. S. v. Planters' Bank, 9 Wheat. 904, 907, 6 L. Ed. 244. France holds it amenable to the process of its courts. The French law, like the law of the United States, regards a corporation as an entity distinct from its stockholders.

■ A suit against a corporation is not a suit against a government merely because it has been incorporated by direction of the government, and is used as a governmental agent, and its stock is owned solely by the government. See affidavit of Rodriguez Barteault; Federal Sugar Refining Co. v. U. S. Sugar Equalization Board (D. C.) 268 F. 575; Sloan Shipyards Corporation v. U. S. Shipping Board Emergency Fleet Corp., 258 U. S. 549, 42 S. Ct. 386, 66 L. Ed. 762; United States v. Strang, 254 U. S. 491, 41 S. Ct. 165, 65 L. Ed. 368.

The only difference between the defendants and other foreign corporations and their officers and agents doing business in the United States is that the French Republic owns a part of the stock of the defendant corporation, and that the defendant company and its agents are selling potash for the French government as well as for others. As appears by affidavit and without contradiction, the French courts do not extend immunity to commercial enterprises owned or controlled by a sovereign state, and suits can be brought and judgments recovered in France, Italy, and Belgium against a government engaging in business. Affidavit of Rodriguez Barteault.

■ The defendant company being an entity distinct from its stockholders, immunity cannot be claimed by it or on its behalf on the ground that it and the government of France are identical in any respect. Private corporations in which a government has an interest, and instrumentalities in which there are private interests, are not departments of government. See United States Shipping Board Emergency Fleet Corp. v. Western Union Tel. Co., 275 U. S. 415, 426, 48 S. Ct. 198, 72 L. Ed. 345; U. S. Shipping Board E. F. Corp. v. Wood (C. C. A.) 274 F. 893, 902.

■ Nor can immunity be claimed by the defendant corporation, or on its behalf, or by or on behalf of any of its officers, agents, or employees, on the ground that they are acting as agents of a foreign government. An agent does not cease to be answerable personally for his illegal acts because he is an agent, even though he may be an instrumentality of government. Sloan Shipyards Corp. v. U. S. Shipping Board Emergency Fleet Corp., 258 U. S. 549, 567, 42 S. Ct. 386, 66 L. Ed. 762.

■ Officers and agents of a corporation are not officers or agents of its stockholders (U. S. v. Strang, supra), and it therefore cannot be successfully urged that an action against an officer or agent of a corporation in which

a sovereign state is a stockholder is in fact an action against the sovereign state. A board consisting of officers appointed by and acting for the executive department of a government (see Compania Mercantil Argentina v. U. S. Shipping Board, supra) is distinguishable from a corporation organized under general laws, with officers and agents selected by its stockholders and acting for it. See U. S. v. Strang, supra.

Moreover, this immunity has not been extended to the officers or crew of foreign warships (2 Moore's Digest Int. Law, pp. 573, 585), nor to consuls or vice consuls (In re Baiz, 135 U. S. 403, 10 S. Ct. 854, 34 L. Ed. 222; 5 Moore's Digest Int. Law, p. 61; U. S. Judicial Code, § 24; 28 USCA § 41 (18), nor to any officers, agents, or employees of a foreign sovereign ruler or sovereign state other than those entrusted to negotiate between foreign states such as ambassadors and other diplomatic representatives of the foreign state (see U. S. Constitution, art. 3, § 2; Judicial Code, §§ 233, 256; 28 USCA §§ 341, 371; 22 USCA § 252). It never has been held that every one acting on behalf of a foreign state enjoys immunity from suit.

Acts of Congress provide that whoever, other than diplomatic officers or attachés, shall act in the United States as agent of a foreign government, without prior notification to the Secretary of State, shall be fined, or imprisoned, or both (22 USCA § 233. See 18 USCA § 98; 4 Moore's Digest Int. Law, p. 411), and declare void only process whereby the person of any ambassador or public minister of any foreign prince or state received as such by the President, or their servant, is arrested or his goods or chattels are attached (U. S. Code, tit. 22, § 252 [22 USCA § 252]).

█ A foreign sovereign cannot authorize his agents to violate the law in a foreign jurisdiction, or to perform any sovereign or governmental functions within the domain of another sovereign, without his consent. He, therefore, cannot claim as a matter of comity or otherwise that the act of the alleged agent in such case is the act of the sovereign, and that a suit against the agent is in fact a suit against the sovereign. This is especially so when such alleged agent is a foreign corporation, or an officer, agent, or employee of a foreign corporation, which is doing business here only by consent, which cannot be as-

sumed to be given, except on condition that they shall be subject to our laws.

This court has not been referred to any authority which extended sovereign immunity to any corporation, or officers or agents, thereof, under similar circumstances. See Coale v. Société Co-operative Suisse des Charbons (D. C.) 21 F.(2d) 180. Neither principle nor precedent requires that this immunity, which, as a matter of comity, is extended to a foreign sovereign and his ambassador, should be extended to a foreign corporation merely because some of its stock is held by a foreign state, or because it is carrying on a commercial pursuit, which the foreign government regards governmental or public.

This is especially so in this case, because, as the ambassador states, the defendant corporation, in which French nationals hold stock, is acting as selling agent for others, as well as for the French government. There cannot be any reason why, to that extent, at least, it and its agents should not be enjoined from violating the laws of the United States.

█ The court does not question any statement of facts made by the ambassador. It only holds that taking all facts for granted, it appears that no property within the territorial jurisdiction of this court is involved in this suit, that this is not a suit against the Republic of France or any representative of that republic, or any department of its government, and that this is not a suit between two sovereign states, and that, therefore, this court has jurisdiction over the person of the defendants in an action to enjoin them from violating the laws of the United States.

Though the ambassador brought the pendency of this suit to the attention of the State Department with which the ambassador's relations are official, the Secretary of State has not made any suggestion to this court. The suit was brought by the Attorney General. These facts indicate that the Executive Department of the government also is of the opinion that this suit is not a suit against the Republic of France, or any representative of that republic.

The motion to set aside the service on the defendants, therefore, must be denied, without prejudice to a motion to dismiss on the ground that the defendant has discontinued doing business in the United States since the suit was begun.