**THE S. S. DENNY.**

District Court, D. New Jersey.
July 22, 1941.

94

Lindabury, Steelman, Zink & Lafferty and James L. Lafferty, all of Newark, N. J., and Charles Recht, of New York City, for libellants.

W. Ludlow James and P. A. Beck, both of New York City, for claimants-respondents.

SMITH, District Judge.

This is a possessory suit brought in the name of Lithuanian Baltic Lloyd Ltd. (hereinafter referred to as Baltic Lloyd), formerly a stockholders association of the Republic of Lithuania, and by Agricultural Cooperative Association of Lithuania Lietukis (hereinafter referred to as Agricultural Cooperative Association), a cooperative association of the Republic of Lithuania, to recover possession of the Steamship Denny, and the cargo, respectively. The libel was filed on behalf of the said libellants by one Charles Recht, as attorney-in-fact.

The subject matter of the suit is at present in the custody and possession of the respondent Lithuanian American Import and Export Corporation (hereinafter referred to as the Import and Export Corporation), a corporation of the State of New York, as trustee, appointed by Jonas Budrys, Consul General of the Republic of Lithuania. The said respondent asserts the right to custody and possession for the use and benefit of the said libellants under the said appointment.

The Latvian State Cargo and Passenger Steamship Line (hereinafter referred to as State Steamship Line), a corporation of the Republic of Latvia, Union of Soviet Socialist Republics, has intervened in the suit and claims ownership and right to possession of the vessel. The said claim is founded upon nationalization laws and decrees promulgated thereunder, to which specific reference is hereinafter made.

### Findings of Fact.

1. The libellant Baltic Lloyd, prior to November 6, 1940, was a stockholders association or legal entity, organized and existing under the laws of the Republic of Lithuania. It was dissolved on the said date, if not prior thereto, by decree of the Supreme Soviet of the Union of Soviet Socialist Republics, to which specific reference is hereinafter made.

2. The libellant, Agricultural Cooperative Association, prior to November 6, 1940, was a cooperative association or legal entity, organized and existing under the laws of the Republic of Lithuania. It was dissolved on the said date, if not prior thereto, by decree of the Supreme Soviet of the Union of Soviet Socialist Republics, to which specific reference is hereinafter made.

3. The respondent, Import and Export Corporation, is a corporation organized and existing under the laws of the State of New York, and is, and has been since 1938, the commercial representative of both libellants in the United States of America.

4. The intervenor, State Steamship Line, is a legal entity, the exact nature of which is uncertain, organized and existing under the laws of the Republic of Latvia, Union of Soviet Socialist Republics, having been organized on October 25, 1940, under authority of a decree of the Council of

People's Commissars of the Union of Soviet Socialist Republics. It definitely appears, however, that the said intervenor, although designated in the statute as a "separate economic organization having the right of a juridical person", is not an independent entity, but is, in fact, an instrumentality of the government of its creation, organized for the sole purpose of taking custody and possession of the steamship lines nationalized pursuant to and in accordance with the laws and decrees to which reference is hereinafter made. The said intervenor is subject to the exclusive control and supervision of the People's Commissariat of Maritime Fleet (Narkommorflot), a division of the government.

5. On or about March 7, 1940, the libellant Baltic Lloyd purchased the Steamship Denny, and at all times thereafter, prior to June 17, 1940, if not thereafter, was the owner of the said vessel. The respondent, Import and Export Corporation, acted as the agent and representative of the said libellant in the purchase of the vessel.

6. In March and April of 1940 the libellant, Agricultural Cooperative Association, in a series of purchases, purchased the cargo, consisting of gasoline, oil, and other commodities, and at all times thereafter, prior to June 17, 1940, if not thereafter, was the owner of the said cargo. The respondent, Import and Export Corporation, acted as the agent and representative of the said libellant in the said purchases.

7. The vessel and cargo, since the time of their acquisition by the respective libellants, have remained in the United States of America.

8. On or about July 21, 1940 (the exact date is not fixed), the "People's Parliament" established the Lithuanian Soviet Socialist Republic and adopted a soviet government. The Prime Minister assumed the duties of the President of the Republic, and, in a series of decrees promulgated under the authority of the "People's Parliament", announced the nationalization of all commercial and industrial enterprises. It is to be noted, however, that these events were preceded by an invasion of the Republic of Lithuania by the armies of Soviet Russia.

9. Thereafter, on July 26, 1940, pursuant to and in accordance with the Constitution of the Union of Soviet Socialist Republics, there were enacted laws under which all industrial and commercial enterprises were nationalized, and the properties and assets of said nationalized enterprises appropriated by the State. Nationalization decrees were promulgated by the Prime Minister, Acting President of the Republic, pursuant to and in accordance with the said laws.

10. Pursuant to and in accordance with the nationalization decrees, the libellants were divested of all right, title and interest in and to their properties and assets, and commissars were appointed to administer their business affairs.

11. On August 3, 1940, the newly created Lithuanian Soviet Socialist Republic was accepted into the Union of Soviet Socialist Republics.

12. On or about September 5, 1940, pursuant to and in accordance with the nationalization laws, by decree promulgated thereunder, the Council of People's Commissars of the Soviet Socialist Republic of Lithuania directed that the properties and assets, including seagoing vessels, of the libellant Baltic Lloyd, be surrendered and delivered to the People's Commissariat of Maritime Fleet (Narkommorflot), a division of the Government.

13. On or about November 26, 1940, pursuant to and in accordance with the nationalization laws, by resolutions adopted thereunder, the Council of People's Commissars of the Soviet Socialist Republics of Lithuania, organized and established the Organizing Bureau for Lithuanian Republic's Consumers Association Society, which organization appropriated the properties and assets of ·the libellant Agricultural Cooperative Association and undertook the administration of its business affairs.

14. It is suspiciously significant that the nationalization decrees hereinabove referred to, although they divested the libellants of all right, title and interest in and to their properties and assets, and deprived their officers of all authority in the administration of their business affairs, preserved the "validity" of the signatures of those officers who, prior, thereto, had been authorized to act for and on behalf of the libellants. This observation is made at this time because the libel is filed by one Charles Recht, as attorney-in-fact, whose authority is predicated on powers of attorney, which are offered as instruments "voluntarily" executed by the officers of the libellants.

15. These facts are of further significance when consideration is given to the claim asserted by the State Steamship Line. The right, title and interest of the said claimant is predicated entirely upon the nationalization decrees, hereinabove referred to, and the rights acquired thereunder. This claimant recognizes that the legal title and the right to possession of the vessel may be vested in the libellants, but only for the purpose of insuring surrender and delivery to the said claimant at the conclusion of these proceedings.

The petition for leave to intervene, filed on behalf of this claimant, is likewise filed by the same Charles Recht as attorney-in-fact.

16. On November 6, 1940, by decree of the Supreme Soviet of the Union of Soviet Socialist Republics, the laws of the Republic of Lithuania were superseded by the codes of the Russian Soviet Federated Socialist Republic. The laws, upon which the existence of the libellants as legal entities depended, were abrogated, thereby effecting their dissolution, if, in fact, this result had not been accomplished prior thereto by the nationalization decrees.

17. The acceptance of the Republic of Lithuania into the Union of Soviet Socialist Republics is not recognized by the United States of America. The sovereignty of the state, Lithuanian Soviet Socialist Republic, created on the territory of the Republic of Lithuania, and the newly established soviet government of that state, have not achieved recognition. The Republic of Lithuania is recognized as the sovereign state, and recognition is accorded its duly accredited representatives.

18. On or about February 20, 1941, Jonas Budrys, Consul General of the Republic of Lithuania, under authority of the Minister of Lithuania to the United States of America, pursuant to and in accordance with the Baltic Civil Code and the Consular Statutes, appointed the Import and Export Corporation trustee of the vessel and its cargo. The appointment authorizes the trustee to retain custody and possession of the vessel and its cargo for the use and benefit of the owners thereof; it further authorizes the trustee to operate the vessel and to account to the owners for the proceeds of such operation.

The vessel and cargo are, in effect, in custodia legis, the custody and possession thereof having been taken by the said Consul General of the Republic of Lithuania,

pursuant to and in accordance with his power and authority, to protect and conserve the properties and assets of his nationals.

19. The said Consul General of the Republic of Lithuania is the duly accredited representative of the recognized government of the said Republic.

20. It is reasonable to infer from the foregoing facts and circumstances that the powers of attorney, under the authority of which the said attorney-in-fact purports to act, were not voluntarily executed, but were executed under coercion, if not actual, implied. This finding is corroborated by cablegrams, received in evidence over objection, transmitted by the persons whose signatures appear on the said powers of attorney. This evidence, admittedly not the best, is worthy of some consideration, especially when it definitely appears that the best evidence is not available under the existing conditions, of. which the Court takes judicial notice.

It cannot be assumed that prudent executives would willfully divest themselves of authority and vest that authority in a stranger, when, as here, the natural and probable consequence of such an act would be inimical, not only to the interest of their business organization, but to their personal interest in that organization. It is apparent that at the time the powers of attorney were executed, the properties, assets and business affairs of the libellants were under the administration of the commissars appointed by the newly established Soviet Government. It may be presumed, under these circumstances, that prudent executives, exercising sound business judgment, would permit the physical assets of the business to remain, as in the immediate case, in the custody and possession of a commercial representative of their own selection, Import and Export Corporation, beyond the jurisdiction of those who seek to confiscate them.

21. The present suit is a mere fiction, and the parties, except the respondent, Import and Export Corporation, are mere nominal parties. The libellants, Baltic Lloyd and Agricultural Cooperative Association, no longer exist as juridical persons, having been dissolved by operation of law, as hereinabove stated; their officers have been divested of all authority, and the administration of their business affairs has been entrusted to commissars. The claimant, State Steamship Line, is an instrumentality of the unrecognized Soviet Government of the Lithuanian Soviet Socialist Republic. The re-

spondent, Import and Export Corporation, is but the servant and agent of the Consul General of the Republic of Lithuania. The vessel is of foreign registry.

The real parties in interest are: First, the Lithuanian Soviet Socialist Republic, and it stands in the anomalous position of being both libellant and claimant; and, second, the Consul General of the Republic of Lithuania, who, at this time, is not within the jurisdiction of the Court. The real controversy is between them.

22. The real parties in interest are neither citizens nor subjects of the United States of America. They are aliens, and, insofar as this Court is concerned, subjects of the Republic of Lithuania. This is equally true of the nominal parties, except Import and Export Corporation.

### Conclusions of Law.

1. The libellants, having been dissolved by operation of law, as hereinabove stated, are without the capacity to maintain this suit. They, as legal entities, are no longer in esse within the territorial limits of their former existence.

2. The powers of attorney, under the authority of which this suit was instituted by the purported attorney-in-fact, are void, having been executed under coercion. The attorney-in-fact is, therefore, without authority to maintain this suit for and on behalf of the libellants.

3. This suit may not be maintained by the libellants. A suit in a court of admiralty may be maintained only by the real party in interest. The libellants are mere nominal parties; the real party in interest is the Lithuanian Soviet Socialist Republic.

4. This suit may not be maintained either directly or indirectly by the Soviet Government of the Lithuanian Soviet Socialist Republic. The Soviet Government, never having achieved recognition by the Department of State, may not invoke the jurisdiction of the courts. Its agents and representatives are in no better position, even though they purport to act in the name of nominal parties, who, under ordinary circumstances, would be permitted access to the courts.

5. The claimant, State Steamship Lines, is an instrumentality of the Soviet Government of the Lithuanian Soviet Socialist Republic, and it likewise, may not invoke the jurisdiction of the courts.

6. The determination of sovereignty is a political question committed by the Con-stitution to the executive and legislative branches of the Government. The decision is binding upon the courts and is not subject to judicial inquiry.

7. The parties to this suit, except the respondents Import and Export Corporation and Ole Hanvorsen, are aliens, and, insofar as this Court is concerned, subjects of the Republic of Lithuania. The aforementioned respondents are mere agents of the Consul General of the Republic of Lithuania, who is in custody and possession of the vessel and its cargo. This suit, therefore, should be regarded as one involving subjects of a foreign country. If so regarded, the Court may decline jurisdiction. The citizenship of a mere nominal party will not deprive the Court of this right.

8. A court of admiralty, although not a court of equity, may proceed on equitable principles. It is bound by its nature and constitution to give judgment upon equitable principles to prevent an obvious injustice. The Consul General has assumed custody and possession of the subject matter of this litigation for the purpose of conservation. It is the opinion of the Court that the rights of the libellants will be adequately protected and their interest in the subject matter of the litigation preserved if the libel is dismissed.

### Discussion.

The libellants, having been dissolved by operation of law, as hereinabove stated, are without capacity to maintain this suit. The laws of the Republic of Lithuania, upon which the existence of the libellants as legal entities depended, were superseded by the codes of the Russian Soviet Federated Socialist Republic. The right of the libellants as juridical persons to sue and be sued was thereupon abrogated. They are no longer in esse within the territorial limits of their former existence, and, therefore, should not be granted extraterritorial rights.

The powers of attorney, under the authority of which this suit was instituted by the purported attorney-in-fact, are void, having been executed under coercion. The attorney-in-fact is, therefore, without authority to maintain this suit for and on behalf of the libellants. The trial court may inquire, at any stage of the proceedings, into the authority of the person bringing the suit, where, as in the instant case, the litigation is instituted by one who purports to be acting for and on behalf of another. If it appears upon such inquiry that the

suit is not authorized, the court may dismiss it. Pueblo of Santa Rosa v. Fall et al., 273 U.S. 315, 47 S.Ct. 361, 71 L.Ed. 658.

It is apparent that the libellants are not the real parties in interest; they, therefore, may not maintain this suit. The libellants are mere nominal parties; their rights are mere colorable rights evanescent in nature; when, and if, enforced, title in the subject matter of the litigation will pass from them to the Lithuanian Soviet Socialist Republic or its designee, the State Steamship Line. It is evident that the real party in interest is the said Lithuanian Soviet Socialist Republic. It is a well-established rule that a suit in a court of admiralty may be maintained only by the real party in interest. The Trader, D.C., 129 F. 462; The Algic, D.C., 13 F.Supp. 834; The Mandu, D.C., 20 F.Supp. 820. The practice of instituting a suit in the name of one person for the benefit of another does not prevail in admiralty. Fretz et al. v. Bull et al., 12 How. 466, 13 L.Ed. 1068; Goldman v. Furness, Withy & Co., Ltd., D.C., 101 F. 467; Wittig v. Canada S. S. Lines, Ltd., D.C., 59 F.2d 428.

It cannot be disputed that the Lithuanian Soviet Socialist Republic, as the real party in interest, may not maintain this suit either directly or indirectly in the absence of recognition of its sovereignty by the Department of State. It is clearly established by competent evidence, and, in fact, it is not denied that the Lithuanian Soviet Socialist Republic has failed to achieve that recognition. A suit on behalf of a foreign state may be maintained in our courts only after recognition of its sovereignty and only by that government which is recognized as its authorized government. Jones v. United States, 137 U.S. 202, 11 S.Ct. 80, 34 L.Ed. 691; Guaranty Trust Co. v. United States, 304 U.S. 126, 58 S.Ct. 785, 82 L.Ed. 1224; The Penza, D.C., 277 F. 91; The Rogdai, D.C., 278 F. 294. These well-recognized principles cannot be defeated by indirection.

The claimant, State Steamship Line, is an instrumentality of the Soviet Government of the Lithuanian Soviet Socialist Republic, and it, likewise, may not be permitted to invoke the jurisdiction of this court. It is, as hereinabove stated, an arm of the People's Commissariat of Maritime Fleet (Narkommorflot), a division of the said government. If access to the courts must be denied a foreign govern-ment because of its failure to achieve recognition, it must likewise be denied an integral part of that government.

The determination of political questions is committed by the Constitution to the executive and legislative branches of the Government, and the propriety of their determination is not subject to judicial inquiry. The question of sovereignty is a political question, the determination of which by the political department of the Government conclusively binds the courts. Oetjen v. Central Leather Co., 246 U.S. 297, 38 S.Ct. 309, 62 L.Ed. 726; United States v. Belmont, 301 U.S. 324, 57 S.Ct. 758, 81 L.Ed. 1134; Agency of Canadian Car & Foundry Co., Ltd., et al. v. American Can Co., 2 Cir., 258 F. 363, 6 A.L.R. 1182; Russian Government v. Lehigh Valley R. Co., D.C., 293 F. 133, and other cases hereinabove cited.

The parties to this suit, except the respondents Import and Export Corporation and Ole Hanvorsen, are aliens, and, insofar as this court is concerned, subjects of the Republic of Lithuania. The said respondents are mere agents of the Consul General, who is in custody and possession of the vessel and its cargo. The suit, therefore, should be regarded as one involving the subjects of a foreign state. If so regarded, this court may decline jurisdiction. The courts of admiralty have complete jurisdiction over suits of a maritime nature between foreigners. The retention of that jurisdiction, however, is discretionary. Charter Shipping Co., Ltd., v. Bowring, Jones & Tidy, Ltd., 281 U.S. 515, 50 S.Ct. 400, 74 L.Ed. 1008; Langnes v. Green, 282 U.S. 531, 51 S.Ct. 243, 75 L.Ed. 520; Canada Malting Co., Ltd., v. Paterson Steamships, Ltd., 285 U.S. 413, 52 S.Ct. 413, 76 L.Ed. 837. The citizenship of a mere nominal party will not deprive the court of the right to decline jurisdiction. United States Merchants' & Shippers' Ins. Co. v. A/S Den Norske Afrika Og Australie Line, 2 Cir., 65 F.2d 392; The Lady Drake, D.C., 1 F. Supp. 317.

The court of admiralty, although not a court of equity, may apply equitable principles in the determination of the rights of parties within its jurisdiction. United States v. Cornell Steamboat Co., 202 U.S. 184, 26 S.Ct. 648, 50 L.Ed. 987; Shoenamsgruber v. Hamburg American Line, 294 U.S. 454, 55 S.Ct. 475, 79 L.Ed. 989; The Gold Digger, D.C., 44 F.2d 660; Rice v. Charles Dreifus Co. et al., 2 Cir., 96 F.

2d 80; Gardner et al. v. Dantzler Lumber & Export Co., Inc., 5 Cir., 98 F.2d 478; Rubin Iron Works, Inc., v. Johnson et al., 5 Cir., 100 F.2d 871. The instant case is one in which equitable principles are peculiarly applicable, and their application can lead to but one result, to wit, the dismissal of the libel. The Court cannot fail to take cognizance of the fact that prior to the events which led to this litigation, and when the libellants were free to exercise their independent judgment, they selected the respondent Import and Export Corporation as their commercial representative in the United States of America. It is our opinion that the libellants, if permitted a free choice at this time, would continue that relationship as it had existed since 1938. The dismissal of the libel will permit the vessel and its cargo to remain in the custody and possession of the said respondent for the use and benefit of the libellants, subject, however, to the supervision of the Consul General, an accredited representative of the Republic of Lithuania. This is the only course which can insure a preservation of the status quo until conditions are more settled.

It is evident that this suit is a mere fiction, and, if for no other reason, should not be countenanced. When the pleadings are considered in the light of the proof, the subterfuge, as well as the necessity for it, become manifest. The actual relief sought is enforcement of the nationalization laws and the decrees promulgated thereunder.

The conclusions of law on first reading would seem to present some inconsistencies; closer study, however, will reveal that this is not the fact. There is a distinction between according recognition to a foreign government and recognizing the effect of its laws upon persons and properties within its jurisdiction. While the courts may not accord recognition to a foreign government which has failed to achieve that status, they are not required to ignore the effect of its laws upon persons and properties within the territorial limits of its jurisdiction.

There are cited in support of the contentions advanced on behalf of the libellants several cases which, except for an outstanding distinguishing fact, would seem to support them. The cited cases involved recognized foreign states and their accredited representatives, and are, therefore, not applicable.

The libel is dismissed.